STATE OF CONNECTICUT *v.* GEORGE FERGUSON

BOGDANSKI, C. J., SPEZIALE, PETERS, HEALEY and ARMENTANO, Js.

Argued June 4—decision released July 28, 1981

*Michael D. Neubert,* assistant public defender, with whom, on the brief, was *Jerrold H. Barnett,* public defender, for the appellant (defendant).

*F. Jerome O'Malley,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Ernest J. Diette, Jr.,* and *Thomas P. Cadden,* assistant state's attorneys, for the appellee (state).

ARTHUR H. HEALEY, J. After a trial to a jury, the defendant was found guilty of possession of marijuana, in violation of General Statutes § 19-481(b), and possession of cocaine, in violation of General Statutes § 19-481(a).[1] From the judgment rendered

---

[1] There exists some confusion in the briefs concerning exactly which crimes the defendant was convicted of. We use the judgment file as the basis for our opinion but note that the confusion apparent in the briefs in no way affects our disposition of the case.

Section 19-481(a) of the General Statutes provides: "Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than three thousand dollars, or be both fined and imprisoned; and for a second offense, may be imprisoned not more than fifteen years, or be fined not more than five thousand dollars, or be both fined and imprisoned; and for any subsequent offense may be imprisoned not

on the verdict, the defendant has appealed. The sole issue presented is whether the affidavit in support of the application for the search and seizure warrant, leading to the defendant's arrest, established probable cause to believe that the defendant possessed marijuana and cocaine.[2] The defendant claims that the supporting affidavit does not provide a sufficient statement of the underlying circumstances from which the affiants could conclude that the informant was credible or his information reliable so that the judge issuing the warrant could properly conclude that probable cause existed for its issuance.

In the application for the search and seizure warrant presented to and authorized by the judge who issued it, the affidavit[3] of the two Norwalk police

more than twenty-five years, or be fined not more than ten thousand dollars, or be both fined and imprisoned."

Section 19-481(b) of the General Statutes provides: "Any person who possesses or has under his control any quantity of a hallucinogenic substance other than marihuana or four ounces or more of a cannabis-type substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than five years or be fined not more than two thousand dollars or be both fined and imprisoned, and for a subsequent offense may be imprisoned not more than ten years, or be fined not more than five thousand dollars or be both fined and imprisoned."

[2] The defendant filed a motion to suppress the evidence seized on similar grounds. This motion was denied by the court, *Ment, J.*

[3] The only information before the issuing authority was this affidavit. Therefore, because of its significance in this case, we set the affidavit out in full below:

"1. That Sgt. Malcolm Skeeter is a regular member of the Norwalk Police Department and has been so employed for the past eleven years; presently employed and assigned to the Youth Bureau of the Norwalk Police Department. That this affiant has supervised and conducted investigations involving narcotics which have resulted in arrest and conviction.

"2. That Officer John Suchy is a regular member of the Norwalk Police Department and has been so employed for the past three and

officers contained the following essential allegations:
On August 21, 1978, Officer John Suchy of the Nor-
walk police department executed an arrest warrant
on an individual whom the officer had known for

one-half years; presently assigned to the Youth Bureau and has
investigated complaints involving the sale of marijuana which have
resulted in arrests and convictions.

"3. Both affiants have personal knowledge of the facts and
circumstances hereinafter related as a result of their own investi-
gative efforts and those of brother officers acting in conjunction with
them and/or have who have reported the results of their investi-
gations to them.

"4. That on August 21, 1978 at approx. 1:10pm, Officer John
Suchy executed an arrest warrant on a person this officer has known
for approximately one year. That during the search incident to the
arrest, this officer found in the possession of this person, fourteen
suspected marijuana cigarettes and one capsule in a plastic bag.

"5. That on August 21, 1978 Sgt. Skeeter and Officer Suchy
conducted an interview with this person. That a Valtox test was
conducted on the supected marijuana and it was found to be found
marijuana. That this person had been arrested for Possession of
Marijuana and Possession of a Controlled Substance. That this
person stated that he had purchased the marijuana and capsule from
one George Ferguson who runs a pool hall located at the intersection
of South Main Street and Hanford Place, South Norwalk.

"6. That during this interview, this person stated that the capsule
which he purchased from George Ferguson, was sold to him as THC.
That the affiant know from police experience that THC is a street
name for a drug named Phencyclidine and also known as angel dust
and/or PCP.

"7. That during this interview this person told the affiants that
he had purchased the marijuana cigarettes and 'THC' from George
Ferguson just several minutes before being placed under arrest by
Officers Suchy and Burke. That Officer Suchy did observe this person
in front of the pool hall located at South Main Street and Hanford
Place approximately three minutes before the custodial arrest took
place.

"8. That during this interview with Sgt. Skeeter and Officer
Suchy, this person stated that the marijuana cigarettes and 'THC'
were purchased from Ferguson while they were in the pool hall and
that this person observed a plastic bag containing what he estimates
to be several hundred capsules of THC and a large quantity of
marijuana. That the purchases of these cigarettes and marijuana
took place in the bathroom located at the rear of the pool hall.

"9. That during this interview with the affiants This person would
identify this person who sold him the marijuana as Ferguson and also

approximately one year. A search of this individual produced fourteen suspected marijuana cigarettes and one capsule in a plastic bag.

Sergeant Malcolm Skeeter joined with Suchy to conduct an interview of this individual. During the questioning, this person stated that he had pur-

as Bilan. That the affiants know that an alias used by George Ferguson is Muharram Ibn Bilan.

"10. That during this interview, this person indicated that he used to sell marijuana for Ferguson and that Ferguson deals in large quantities of marijuana, 'THC,' and also cocaine. That this person also indicated that Ferguson also stashed large amounts of marijuana in the cellar below the pool hall which Ferguson uses as living quarters. That this person indicated that marijuana was stashed in a file cabinet and that 'THC' and cocaine were kept in a file cabinet and also next to the bed in the cellar.

"11. That the affiants know thru personal knowledge that there is a pool hall located at 70 South Main Street, which is located at the intersection of South Main Street and Hanford Place and the affiants know that this pool hall is operated by George Ferguson, aka Muharram Ibn Bilan. That the affiants know thru personal knowledge that Ferguson has been arrested in this city in the past for Possession of Marijuana and Possession of Marijuana with Intent to Sell and that his latest arrest in this city was on November 2, 1977 and that this arrest took place at the pool hall located at 70 South Main Street and that Ferguson was found to have on his person a large quantity of marijuana cigarettes. That the affiants know that Ferguson had been arrested in New York City within the past six months for Possession of Cocaine and to the best of our knowledge the matter is still pending.

"12. That the affiants have advised by members of the Special Services of the Norwalk Police Department that they were advised by the Connecticut Statewide Narcotics Task Force that George Ferguson is known to them to be dealing in narcotics.

"13. That during this interview with this person, this person indicated that a burglary had occurred on this date between 11:30am-12:30pm at a private residence located off West Cedar Street and that the name of the owners of the dwelling are the Lee's. That entry was gained thru a rear window and that a large amount of coins were taken and that clothes were hanging up in the rear yard. That on this date at 6:31pm Mr. Lee of 7 Quaker Road, Norwalk, reported a burglary into his residence. That Quaker Road is located off Scribner Avenue just north of West Cedar Street. That this affiant (Officer Suchy) contacted Mr. Lee and ascertained that the

chased marijuana and a capsule[4] from the defendant, alternatively named "Bilan," who ran a pool hall at the intersection of South Main Street and Hanford Place in South Norwalk. The unnamed individual revealed that the actual purchase occurred in the bathroom located at the rear of the pool hall and that he had observed a plastic bag containing an estimated several hundred capsules of "THC" and a large quantity of marijuana. He also stated that he used to sell marijuana for the defendant and that the defendant kept large amounts of marijuana in the cellar below the pool hall, which the defendant used as living quarters, and in a file cabinet. Cocaine and "THC" were also stored in a file cabinet next to a bed in the cellar.

The officers stated that they knew, from personal knowledge, that there was a pool hall located at the

---

rear bathroom window was found open and that coins were missing and that the clothes were hanging out on a line in the backyard.

"14. Whereas, the undersigned affiants believe that based on their training and experience, knowledge of the crime of Possession of Marijuana with Intent to Sell in violation of 19-481(b) and Possession of Controlled Substances in violation of 19-481(b) of Connecticut State Statutes, the facts and circumstances as related by the confidential informant who has personal knowledge of this illegal activity, the observations of the affiants, and all of the items of related matter as it appears in the affidavit and body of the application together with the material concerning the crime, cause the affiants to have probable cause to believe that there is currently being conducted and concealed on the above named person and location, illegal marijuana and controlled substances.

The undersigned has not presented this application in any other court or to any other judge.

Wherefore the undersigned affiants pray that a warrant may issue commanding a proper officer to search said person or to enter into or upon said place or thing search the same, and take into custody all such property."

The foregoing affidavit was signed by Officer John Suchy and Sergeant Malcolm Skeeter of the Norwalk Police Department on August 21, 1978.

[4] The informant said that this capsule was sold to him as "THC," Phencyclidine, also known as "angel dust" or "PCP."

intersection identified by this informant, that the defendant operated this pool hall, and that the defendant was known as both "George Ferguson" and "Muharram Ibn Bilan." The affiants were also aware of the defendant's past arrests in Norwalk for possession of marijuana and possession of marijuana with intent to sell. They also knew that the defendant's most recent arrest occurred in November, 1977, in the same pool hall for which the present warrant was sought; at that time a large quantity of marijuana was found on the defendant's person. The affiants, in addition, stated that they knew that the defendant had been arrested in New York City within the past six months for possession of cocaine. The officers had also been advised by members of the special services department of the Norwalk police department that the defendant was known to the Connecticut statewide narcotics task force to be dealing in narcotics.

Finally, the affiants indicated that, during the interview with the informant, he stated that an unrelated burglary had occurred earlier on this same day between 11:30 a.m. and 12:30 p.m. at a private residence in Norwalk located off West Cedar Street. He also related the name of the owner of the burglarized dwelling and that entrance was gained by the burglar(s) through a window at the rear of the house. In addition, the informant stated that a large amount of coins was taken and that clothes were hanging in the yard. All of the facts concerning the burglary, as related by the unnamed informant, were confirmed by the affiants and included in the affidavit.

The defendant specifically argues that, on the basis of the above allegations, a detached and disinterested magistrate could not have found that the

informant was credible or that his information was reliable so that he could properly find probable cause to issue the warrant. We do not agree with this claim of error and hold that there was a sufficient statement of the underlying circumstances of the matter from which the court could find that the information was credible or that the informant was reliable so as to support a finding of probable cause to issue the warrant.

"The fourth amendment to the United States constitution provides that 'no warrants shall issue, but upon probable cause, supported by oath or affirmation.' See also Conn. Const. art. I § 7. ' "Through the fourteenth amendment the fundamental federal constitutional safeguards as to the issuance of warrants embodied in the fourth amendment, as interpreted and applied in decisions of the United States Supreme Court, are made obligatory upon the states. *Ker* v. *California,* 374 U.S. 23, 33, 83 S. Ct. 1623, 10 L. Ed. 2d 726 [1963]." ' *State* v. *Jackson,* 162 Conn. 440, 443, 294 A.2d 517, cert. denied, 409 U.S. 870, 93 S. Ct. 198, 34 L. Ed. 2d 121 (1972); see *State* v. *Licari,* 153 Conn. 127, 214 A.2d 900 (1965)." State v. Bember, 183 Conn. 394, 409, 439 A.2d 387 (1981).

We have stated that "[p]robable cause to search exists if: (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity or will assist in a particular apprehension or conviction . . . *and* (2) there is probable cause to believe that the items sought to be seized will be found in the place to be searched." *State* v. *DeChamplain,* 179 Conn. 522, 528–29, 427 A.2d 1338 (1980). Since the only information presented to the issuing authority in

this case was the affidavit of the two police officers, the decisive question is whether the facts recited therein were sufficient to support a finding of probable cause. *State* v. *Bember,* supra, 410; *State* v. *Jackson,* 162 Conn. 440, 444, 294 A.2d 517, cert. denied, 409 U.S. 870, 93 S. Ct. 198, 34 L. Ed. 2d 121 (1972).

In the present case, we are dealing with a warrant based on an affidavit containing statements by an unidentified informant which, if trustworthy, would establish the probable cause necessary for the issuance of the warrant. The proper standard to test the validity of such a warrant was announced in *Aguilar* v. *Texas,* 378 U.S. 108, 114, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964), where the United States Supreme Court held that a search warrant cannot properly issue based on information given to police by an unidentified informant unless "the magistrate [is] informed of [1] some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and [2] some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed . . . 'was credible' or his information 'reliable.' " Id., 114; see *State* v. *Bember,* supra, 410–11; *State* v. *Williams,* 170 Conn. 618, 631, 368 A.2d 140, cert. denied, 429 U.S. 865, 97 S. Ct. 174, 50 L. Ed. 2d 145 (1976); *State* v. *Jackson,* supra, 446. Since the defendant has not made any claim under the first prong, it is the second prong, or "veracity prong," of the *Aguilar* test which the defendant contends was not satisfied.[5]

---

[5] Counsel for the defendant, at oral argument before us, expressly disclaimed any challenge to the warrant under the first prong of the *Aguilar* test. Therefore, there is no need for us to consider it further. We do, however, note that the first prong of *Aguilar* is fully satisfied.

When an affidavit contains information from an untested informant, this court has employed several methods by which to judge the information's reliability or the informant's credibility. Three of the most common factors used to evaluate the reliability of an informant's tip are (1) corroboration of the information by police, (2) declarations against penal interest by the informant-declarant, and (3) the reputation and past criminal behavior of the suspect. We will treat each of these factors separately.

If the police have evidence (such as from prior independent police work), which corroborates some of the details included in the affidavit, then an inference of reliability will arise. *Spinelli* v. *United States,* 393 U.S. 410, 417–18, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969); *Draper* v. *United States,* 358 U.S. 307, 309–10, 79 S. Ct. 329, 3 L. Ed. 2d 327 (1959); *United States* v. *Canestri,* 518 F.2d 269, 272 (2d Cir. 1975); *State* v. *Jackson,* supra, 448. In fact, "if there has been sufficient corroboration, a statement may support a warrant regardless of its source." *State* v. *Jackson,* supra, 447; see *United States* v. *Crane,* 445 F.2d 509, 519 (5th Cir. 1971); *Katz* v. *Peyton,* 334 F.2d 77, 78 (4th Cir.), cert. denied, 379 U.S. 915, 85 S. Ct. 261, 13 L. Ed. 2d 185 (1964), reh. denied, 379 U.S. 984, 85 S. Ct. 643, 13 L. Ed. 2d 577 (1965).

The affiant's corroboration of the details of the informant's statement in this affidavit does not, standing alone, establish a sufficient basis for establishing the reliability of the informant's information. The fact, however, that the affiants, through personal knowledge, could confirm some of

the basic facts[6] of the informant's statement does provide a basis with which we can combine other reliability factors.[7]

A second factor from which reliability can be inferred is whether the informant has made a statement against his penal interest in the course of providing the tip. *United States v. Harris,* 403 U.S. 573, 583, 91 S. Ct. 2075, 29 L. Ed. 2d 723 (1971); *State v. Jackson,* supra, 450. The affidavit reveals that the informant not only admitted to purchasing marijuana and "THC" from the defendant just before he was arrested by Suchy on August 21, 1978, but also that the informant "used to sell marijuana for" the defendant.[8] We observe that the unnamed

[6] The affiants corroborated that there was a pool hall located where the informant said it was and also that the defendant ran the pool hall. Also verified was the informant's knowledge of both of the defendant's names. While we agree with the defendant that knowledge of the location and operator of the pool hall may be "common knowledge" and not entitled to great significance, the informant's knowledge of the defendant's two names does indicate more than a passing acquaintance with the defendant and is significant when corroborated, as it was here, in contributing to a valid finding of probable cause. Therefore, the issuing authority was entitled to "determine for himself the persuasiveness of the facts relied on to show probable cause." *State v. DeChamplain,* 179 Conn. 522, 528, 427 A.2d 1338 (1980).

[7] In this case a Valtox Test was performed on the suspected marijuana taken from the unnamed informant and it proved to be marijuana. One court has noted that the reliability of an informer was bolstered by testing the suspected narcotics (before the warrant was sought) to see if, in fact, it was narcotics, as was the case here. See *Commonwealth v. Stewart,* 358 Mass. 747, 752, 267 N.E.2d 213 (1971).

[8] The defendant has attempted to detract from the significance of the informant's statements against interest by pointing out that the informant was not identified in the affidavit. We do not find this to be persuasive. We have stated that the identity of an informant need not be disclosed. *State v. Bember,* 183 Conn. 394, 411, 439 A.2d 387 (1981); *State v. Saia,* 172 Conn. 37, 41, 372 A.2d 144 (1976); *State v. Rose,* 168 Conn. 623, 632, 362 A.2d 813 (1975); *State v. Jackson,* 162 Conn. 440, 446, 294 A.2d 517, cert. denied, 409 U.S. 870, 93 S. Ct. 198, 34 L. Ed. 2d 121 (1972). This view mirrors

informant thus articulated *two* statements linking himself to criminal activity. "People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions." *United States* v. *Harris,* supra, 583. "Common sense in the important daily affairs of life would induce a prudent and disinterested observer to credit these statements .... Admissions of crime . . . carry their own indicia of credibility." *United States* v. *Harris,* supra; *State* v. *Jackson,* supra, 450. We have held that statements against penal interest may be a substantial basis for crediting an informant's tip and may be considered by an issuing authority in a warrant proceeding. *State* v. *Jackson,* supra, 450. Again, while this factor, in itself, may not be sufficient to credit an informant's information, it is another indicia of the reliability of the information provided by the informant in this case and contributes to a finding of probable cause.

A third factor which we have relied upon to determine the reliability of information provided by an informant is the reputation or past criminal behavior of the suspect. In *State* v. *Romano,* 165 Conn. 239, 332 A.2d 64 (1973), we allowed the use of the reputation of the suspect as a consideration in weighing the reliability of an informant's information. We stated that a prior arrest record, pertaining as it did to the reputation of the suspect, was " 'a practical consideration of everyday life' upon which an officer (or a magistrate) may properly rely in assessing the reliability of an informant's tip." Id., 246, quoting *United States* v. *Harris,* supra, 583; see *United States* v. *Canestri,* supra, 272–73.

---

*Aguilar* which also observes that the identity of the informant "need not be disclosed." See *Aguilar* v. *Texas,* 378 U.S. 108, 114, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964). This is merely one additional factor to be considered by the magistrate when determining the existence of probable cause.

In the present case, Skeeter and Suchy stated in the affidavit that they knew that the defendant had previously been arrested in the city for similar drug possession crimes and that they knew that the defendant's most recent arrest in Norwalk occurred in the same pool hall which the informant had identified as the site of the present illegal activity. The affiants also stated that the defendant was arrested in New York City for possession of cocaine and that the defendant was known to state narcotics officers to be "dealing in narcotics." The abundance of information possessed by the affiants in this case concerning the reputation and past criminal behavior of the defendant provided another basis upon which to assess the reliability of this informant's information and contributes to a finding of probable cause.

On the basis of these three factors, i.e., the corroboration of information contained in the affidavit, the informant's statements against penal interest and the reputation and past criminal behavior of the suspect, we conclude that there existed a sufficient basis of reliability upon which the issuing authority could have found probable cause to search. *United States* v. *Canestri,* supra, 272–73; see *State* v. *Rose,* 168 Conn. 623, 633, 362 A.2d 813 (1975).

In further addressing the defendant's claim, we note that there is a separate and distinct method by which the "veracity prong" of the *Aguilar* test may be satisfied. This alternative route deals with the "credibility" or past performance of a particular informant. "The previous reliability of an informant, though not constitutionally required, is a basis for crediting his information." *State* v. *Romano,* supra, 244; see *United States* v. *Harris,* supra, 581–82; *State* v. *Bember,* supra, 411n.

The defendant argues that the affidavit does not sufficiently establish the credibility of the unnamed informant because it does not contain a "track record" of his past reliability. While the affidavit does not state that the informant has given information leading to past arrests or convictions, it does indicate that the informant, whom Suchy had known for approximately one year, related facts to the affiants concerning an unrelated burglary which were proven correct before the affidavit was sworn. It is significant that the search warrant for the defendant's pool hall was issued after Suchy and Skeeter had sufficient time within which to corroborate the burglary facts. The independent corroboration by the police raised the reasonable probability that the remaining facts were also true.

In this instance, therefore, the informant did provide accurate information to the police. Likewise, in *Harris* where there was no averment in the affidavit that the informant had previously given "correct information," the court observed that "the inquiry is, as it always must be in determining probable cause, whether the informant's *present* information is truthful or reliable . . . ." *United State v. Harris,* supra, 582. The fact that the burglary information was unrelated to the information implicating the defendant does not detract from its reliability or the informant's credibility. We consider the burglary information to be the equivalent of an instance of past recitation of accurate facts. It follows, therefore, that the informant did have a "track record," albeit a short one, but a recent one, of past reliability.

"The theory of corroboration is that a statement which has been shown true in some respects is reasonably likely to be true in the remaining respects."

*State* v. *Jackson,* supra, 447. Therefore, under the circumstances of this case, having no reason to doubt the veracity of the informant, the police officers and the magistrate could reasonably have inferred that the remaining statements by the informant were probably true.

In the present case, the magistrate concluded that the affidavit contained sufficient facts to establish probable cause to search the premises of the defendant. "In making his determination on the issue of probable cause, the magistrate is entitled to rely on the ordinary dictates of common experience and on his own common sense. *Spinelli* v. *United States,* 393 U.S. 410, 415, 419, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969); *State* v. *Romano,* 165 Conn. 239, 243, 245, 332 A.2d 64 (1973)." *State* v. *Bember,* supra, 412. We find that the factors which we have discussed, when combined and examined in toto, give us no reason to challenge this conclusion.

There is no error.

In this opinion the other judges concurred.