STATE OF CONNECTICUT *v.* RICHARD SALZ, SR.
(2586)
(2587)

HULL, SPALLONE and BIELUCH, Js.

Argued April 1—decision released July 15, 1986

*James M. S. Ullman,* for the appellant (defendant in both cases).

*Julia DiCocco Dewey,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, *Thomas V. O'Keefe, Jr.,* assistant state's attorney, and *Todd Pfister,* legal intern, for the appellee (state).

HULL, J. After a trial to a jury, the defendant was found guilty of four counts of larceny in the second degree, a violation of General Statutes §§ 53a-119 (8) and 53a-123 (a) (1). In his appeal from the judgment rendered on the verdicts, the defendant claims the trial court erred in four respects: (1) in refusing to suppress the fruits of a search the police conducted of his garage; (2) in permitting the assistant state's attorney to make derogatory remarks about him during closing argument; (3) in allowing the state to amend the information during trial to cure a defect;[1] and (4) in denying his motion for judgment of acquittal on the basis of the insufficiency of evidence. We find no error.

---

[1] Two separate informations, one charging a single count of larceny in the second degree, the other charging three counts of larceny in the second degree, were filed against the defendant. He was tried jointly under both informations and was convicted on all counts. Thereafter, two judgments of conviction, one for one count of larceny in the second degree and another for three counts of larceny in the second degree were rendered against the defendant. While the defendant appealed from each judgment separately, this court ordered that the appeals be combined.

On January 8, 1982, detectives Gerald O'Donnell and Frank Bradley of the Cheshire police department, on the basis of information provided by two informants, obtained a warrant to search the buildings on the defendant's property in East Haven, exclusive of his home. On the same day, O'Donnell and Bradley, accompanied by five other police officers, executed the warrant and seized from the defendant's garage a 1978 maroon Ford pickup truck, a 1979 blue Ford pickup truck, a 1979 dual wheel Ford pickup truck, and two Connecticut license plates, one of them mutilated. Prior to trial, the defendant moved to suppress these items and others seized during a subsequent search of his property, claiming that the items taken on January 8 were seized unlawfully and that those seized later, on January 11, were the fruits of that first unlawful seizure. The trial court denied the defendant's motion.

The defendant makes three separate arguments in support of his claim that the trial court erred in denying his motion to suppress. In the first, he asserts that the warrant under which the officers searched his garage was not based on probable cause. " 'Probable cause exists when the facts and circumstances within the knowledge of the officer and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that a felony has been committed.' *State* v. *Middleton,* 170 Conn. 601, 604, 368 A.2d 66 (1976)." *State* v. *Ralston,* 7 Conn. App. 660, 673, 510 A.2d 1346 (1986). There is probable cause to search where " '(1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity or will assist in a particular apprehension or conviction . . . *and* (2) there is probable cause to believe that the items sought to be seized will be found in the place to be searched.' (Emphasis in original; citations omitted.) *State* v. *DeChamplain,* [179 Conn. 522,

528–29, 427 A.2d 1338 (1980)]; see *State* v. *Arpin,* [188 Conn. 183, 448 A.2d 1334 (1982)]." *State* v. *Delmonaco,* 194 Conn. 331, 337, 481 A.2d 40, cert. denied, 469 U.S. 1036, 105 S. Ct. 511, 83 L. Ed. 2d 401 (1984). In determining whether a warrant was lawfully issued, the reviewing court must consider only the information that was before the magistrate or judge at the time he or she signed the warrant. *State* v. *Ralston,* supra, 671.

Here, the affiants, O'Donnell and Bradley, provided the following information in their affidavit in support of the warrant: On January 2, 1982, O'Donnell received a phone call from a confidential informant who had previously provided reliable information to the police. The informant told O'Donnell that during the week of December 28, 1981, to January 1, 1982, he had been in the defendant's garage on route 80 near the North Branford-East Haven line visiting one of the defendant's employees who was a friend. The employee told the informant that the defendant was involved in stealing new trucks and, in furtherance of that activity, altered their vehicle identification numbers. The informant also related that while in the garage he saw three trucks, two of which were black and one of which was red. He was told by the employee that one of the three trucks had been stolen in Cheshire during the week of December 20, 1981. Finally, the informant told O'Donnell that the defendant was running an electrical business out of his garage.

On January 4, 1982, O'Donnell received a call from detective Ralph Puglia of the West Haven police department who said that an unnamed informant told him that the defendant had three pickup trucks in his garage, at least two of which were stolen. According to the informant, one of the trucks was stolen from North Branford while another was stolen from a Ford dealership located near routes 10 and 42 in Cheshire. The informant thought that the name of the dealership

was Academy Ford. Three days later, the Cheshire police received a complaint from the sales manager at Dowling Ford, Inc., regarding a missing black Ford pickup truck bearing the vehicle identification number (VIN) 2FTCF10EGCCA20229 which he believed had been stolen from the dealership's parking lot. Dowling, which was previously named Academy Ford, is located on route 10 in Cheshire approximately 200 yards from route 42. In an attempt to verify some of this information, Bradley contacted the department of motor vehicles and Southern New England Telephone Company and discovered that the defendant lived in East Haven, and had a phone listing for an electrical business at his home address.

On the basis of the information given in the affidavit, a reasonable man could justifiably believe that the black Ford pickup truck with the VIN 2FTCF10EGCCA20229 was the subject of criminal activity and that it would be found in the defendant's garage. The first unnamed informant told the police that he had been at the defendant's garage within a week before the warrant was sought and that while he was there he had seen three trucks, two of which were black. He also stated that he had been told by a friend, one of the defendant's employees, that the defendant altered VIN numbers on stolen trucks and that one of the trucks then in the garage had been stolen in Cheshire during the week of December 20. This information was reinforced by information relayed by the West Haven police from the second informant who, only four days before the police sought the warrant, told them that the defendant had three trucks, two of them stolen, in his garage, and that one of the trucks had been stolen from Academy Ford. Finally, the day before the warrant was issued, the police received verification that during the time frame given by the employee, a black pickup truck with the VIN

2FTCF10EGCCA20229 had been stolen from Dowling Ford, Inc. This information, coupled with police corroboration of details provided by the informants, was sufficient to establish probable cause to believe that the black pickup truck was stolen and that it was then in the defendant's garage.

It is, of course, axiomatic that the authority who issues the warrant, not the affiants, must determine whether probable cause exists to support the warrant. *State* v. *DeChamplain,* supra, 528. In the usual case, the requirement that the issuing authority independently determine probable cause presents no special problem. Where, however, a warrant is sought based on hearsay information provided by an informant who is unnamed and, therefore, unknown to the issuing authority, the magistrate may be hampered in the independent assessment of probable cause. Accordingly, the United States Supreme Court has established, and our Supreme Court has adopted; *State* v. *Kimbro,* 197 Conn. 219, 235–36, 496 A.2d 498 (1985);[2] the two-prong *Aguilar-Spinelli* test for determining whether or not the judge or magistrate was entitled to authorize a warrant based on information provided by an informant.

[2] In *State* v. *Kimbro,* 197 Conn. 219, 235–36, 496 A.2d 498 (1985), our Supreme Court held that under certain circumstances article first, § 7 of the Connecticut constitution requires a more searching examination of whether probable cause exists than does the fourth amendment to the United States constitution. The court in that case, therefore, held that the more rigorous two-prong "veracity" and "basis of knowledge" test enunciated in *Aguilar* v. *Texas,* 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964), and refined in *Spinelli* v. *United States,* 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969), and not the "totality of the circumstances" test enunciated in *Illinois* v. *Gates,* 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527, reh. denied, 463 U.S. 1237, 104 S. Ct. 33, 77 L. Ed. 2d 1453 (1983), must be applied to determine whether probable cause to search existed if probable cause was based in part on information provided by an informant. While *Kimbro* involved a warrantless search, this court has previously determined that the *Kimbro* holding governs even where the challenged search was authorized by a warrant. *State* v. *Garcia,* 7 Conn. App. 354, 358, 508 A.2d 824 (1986).

See *Spinelli* v. *United States,* 393 U.S. 410, 415, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969); *Aguilar* v. *Texas,* 378 U.S. 108, 114, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964). Under the *Aguilar-Spinelli* test, the magistrate or judge may credit information provided by an unnamed individual only where the affidavit discloses some of the underlying circumstances from which the informant derived his information and some of the underlying circumstances from which the affiant determined either that the informant was credible in general or that the information he provided was reliable on the occasion in question. *Aguilar* v. *Texas,* supra, 114; *State* v. *Kimbro,* supra, 235–36.

The information given by the first unnamed source passes the *Aguilar-Spinelli* test. The informant acquired part of his or her information through personal observation, and the magistrate was, of course, entitled to find a reliable basis of knowledge for that portion of the information. See *State* v. *Jackson,* 162 Conn. 440, 446, 292 A.2d 517, cert. denied, 409 U.S. 870, 93 S. Ct. 198, 34 L. Ed. 2d 121 (1972). The informant, however, also related information which was not derived from personal observation, that provided by the defendant's employee. Accordingly, we must also determine whether the trial court was entitled to find that the employee had a reliable basis for his knowledge. See *Spinelli* v. *United States,* supra, 425. (White, J., concurring.) Here, there were factors from which the magistrate could have inferred that the employee had a reliable basis for his knowledge. While the affidavit did not contain an express statement that the employee acquired his information from personal observation, it strongly indicated that he did. The employee worked for the defendant and, although it is not clear what position he held, it is clear from the affidavit that he had access to the garage, the site of the alleged ille-

gal activity. Accordingly, the authority issuing the warrant could reasonably infer that the employee had a reliable basis for his or her knowledge.

The credibility requirement of *Aguilar-Spinelli* was also fulfilled. Bradley and O'Donnell recited in their affidavit that the informant had previously provided reliable information to the police. "The previous reliability of an informant, though not constitutionally required, is a basis for crediting his information." *State* v. *Romano,* 165 Conn. 239, 244, 332 A.2d 64 (1973).[3]

The affidavit also contained sufficient detail from which the magistrate could reasonably infer that the information provided was reliable on this particular occasion. The reliability of an informant's knowledge may be shown in several ways: (1) if the police corroborate some of the information; (2) if the informant makes declarations against penal interest; or (3) if the defendant has a reputation or a past criminal record consistent with that suggested by the informant. *State* v. *Ferguson,* 185 Conn. 104, 113, 440 A.2d 841 (1981). Here, the first of these factors was present. The police verified some of the information: that the defendant lived in East Haven, that he conducted an electrical business from his home address and that a black pickup truck had been stolen around the time the informant saw a black truck in the defendant's garage.[4] Finally,

---

[3] We note that the affiants did not, as was done in *State* v. *Romano,* 165 Conn. 239, 244, 332 A.2d 64 (1973), relate how the previously provided information was proven reliable. They did not, for example, aver that convictions resulted or that the information was verified by the police. Rather, the affiants merely made an unsupported assertion of reliability. Given the other indicia that the information was reliable, we need not determine whether such a conclusory statement alone would be sufficient to establish informant credibility.

[4] We need not determine whether in the light of our Supreme Court's decision in *State* v. *Kimbro,* 197 Conn. 219, 496 A.2d 498 (1985), corroboration of innocent or noncriminal activity alone is sufficient to establish probable cause since in this case, probable cause was not based solely on corroboration of these allegations.

the information that the defendant was stealing pickup trucks was repeated by the second informant. "Dovetailing of information from different sources also provides corroboration." *State* v. *Ralston, supra,* 673. In light of these factors, there was a sufficient basis for the magistrate to evaluate whether or not the information provided by the first unnamed police source should be believed and, accordingly, to make an independent determination of the existence of probable cause.

It is less clear whether the *Aguilar-Spinelli* requirements were satisfied as to the information provided by the second informant. The affiant did not expressly state the basis of the second informant's knowledge. A reliable basis of knowledge may, however, be inferred if the person providing the information gives the type of detail that would be available only to one who derived his information either in person or through other reliable means. *Spinelli* v. *United States, supra,* 416. Here, the second informant did provide the type of detail that indicates a reliable basis of knowledge. He stated that the defendant had three, four-wheel drive pickup trucks in his East Haven garage, located near the North Branford line, that one of the trucks was stolen from North Branford and another from a Ford dealership near routes 10 and 42 in Cheshire, possibly named Academy Ford. Additionally, some of this information was corroborated by the police or by information given by the first informant. Under the circumstances, we cannot say that the issuing authority erred by concluding that there was a reliable basis for the second informant's knowledge.

The information in the affidavit supporting the "credibility" or "reliability" prong of the test, however, was minimal. The affiants did not even claim that the second informant had previously provided reliable information or even that he was previously known to the

police. There was, of course, corroboration of some of the information the second informant provided: that a truck had recently been stolen from Academy Ford and that there were three trucks in the defendant's garage. We need not, however, determine whether this corroboration alone was sufficient to show the reliability of the information. Even if the information provided by the second informant did not alone satisfy the *Aguilar-Spinelli* test, the issuing authority, contrary to the defendant's contention, was not required to ignore that information entirely when determining whether there was probable cause for the warrant to issue. *State* v. *Delmonaco,* 194 Conn. 331, 341, 481 A.2d 40, cert. denied, 469 U.S. 1036, 105 S. Ct. 511, 83 L. Ed. 2d 401 (1984) (reviewing court need not ignore tip that alone did not satisfy *Aguilar-Spinelli* when determining whether affidavit sufficient to establish probable cause). "We note in this connection that it is not necessary that all the information listed in the affidavit meet this test. As long as one or more of the informants, *taken singly or together,* establish probable cause as gauged by *Aguilar-Spinelli,* the affidavit is sufficient to justify the issuance of the [warrant]." (Emphasis added.) *State* v. *Ralston,* supra, 674. As discussed above, the information provided by both unnamed informants taken together did establish probable cause to search the defendant's garage. Accordingly, the search warrant was lawfully issued and, therefore, the trial court did not err in denying the defendant's motion to suppress on this basis.

The defendant next argues that the fruits of the search of his garage should have been suppressed because the warrant issued violated the particularity requirement of the fourth amendment to the United States constitution and article first, § 7, of the Connecticut constitution. The warrant the defendant challenges authorized the police to seize "Trucks, (a 1982,

Ford Pickup truck, color black, model F-100, style Flairside bearing VIN # 2FTCF10EGCCA20229)." The defendant claims that the warrant was constitutionally infirm because the plural form of the word truck was used thereby authorizing the police to seize without limitation any trucks present in his garage. It is true, as the defendant claims, that a warrant which does not list the items to be seized with particularity violates the fourth amendment and article first, § 7, of the Connecticut constitution. See *Marron* v. *United States*, 275 U.S. 192, 196, 48 S. Ct. 74, 72 L. Ed. 231 (1927); *State* v. *Pepe*, 176 Conn. 75, 78, 405 A.2d 51 (1978). We disagree, however, with the defendant's reading of the warrant. A common sense reading of the warrant indicates that the description information ("a 1982, Ford Pickup truck, color black, model F-100, style Flairside bearing VIN # 2FTCF10EGCCA20229)" was intended to particularize the category "Trucks." Accordingly, the warrant authorized the police to seize only one very specifically described truck. It did not, therefore, violate the particularity requirement of either the fourth amendment to the United States constitution or article first, § 7, of the Connecticut constitution.

The defendant argues alternatively that the police exceeded the scope of the warrant by seizing portions of several trucks other than the one listed in the warrant. The state stipulates that items other than a black pickup truck were seized but argues that the seizure of the other articles was justified by the plain view doctrine. We agree with this view.

"The plain view doctrine may be invoked to validate the seizure of contraband or stolen goods not mentioned in a warrant where two requirements are satisifed: (1) the initial intrusion which enabled the police to view the items was lawful; and (2) the police had probable cause to believe that the items were contraband or stolen goods." (Footnote omitted.) *State* v. *Hobson*, 8

Conn. App. 13, 18, 511 A.2d 348 (1986). It is clear, in light of our analysis of the validity of the warrant, that the first requirement for application of the plain view doctrine was satisfied: the police were lawfully present on the defendant's property and in his garage when they saw the items they seized. The determinative question, then, is whether there was probable cause to believe that the seized items were contraband or stolen goods.

"Probable cause to believe that goods are stolen exists when there is enough trustworthy information supporting that proposition that a person of reasonable caution would be justified in believing it." Id., 19. Here, three items seized during the January 8 search were used as the basis for three of the four counts of larceny against the defendant: a 1978 maroon Ford pickup truck with the VIN F14HEBJ4834, a 1979 blue Ford pickup with the VIN X-25JKEJ7148, and a 1979 dual wheel Ford pickup truck with the VIN 37SNEA9849. Before seizing the maroon truck, the police determined that several tags containing its identification numbers had been removed, and that its federal mylar sticker, an inalterable identification marker, had been removed. They also knew, based on a telephone inquiry made during the course of the search, that it had been reported stolen within the previous two weeks. They had extensive grounds to believe that the blue truck, too, had been stolen. Its mylar identification sticker had been removed and its VIN tampered with. After checking with the department of motor vehicles from the scene, the police determined that the license plate the truck bore had been registered to a 1974 truck. It was clear to the police, however, that the truck was a much newer vehicle. Similarly, one of the tags on the dual wheel truck which bore its VIN had been tampered with while another had been hidden. The mylar identification sticker had been removed from this vehicle also.

In addition to the specific information they acquired concerning the three trucks they seized, the police had general information which indicated that the trucks were stolen. Before they entered the garage, the police had probable cause on the basis of the information provided by the two informants to believe that the defendant was involved in stealing trucks and altering their vehicle identification numbers. When they did execute the warrant, they immediately observed, in open view, parts of numerous vehicles scattered around incongruously in an electrical shop. While the vehicles were relatively new, and apparently undamaged, they were nevertheless partly disassembled. The police also discovered, in open view, tools used to disassemble vehicles, dies which could be used to stamp vehicle identification numbers, and a mutilated stolen license plate. Detective Charles Kelly of the Connecticut state police, who had extensive experience investigating automobile theft, testified at the hearing on the defendant's motion to suppress that the presence of these items was consistent with "chop shop" activities, wherein stolen vehicles are disassembled so their parts may be resold. This information clearly was sufficient to establish probable cause to believe that the vehicles were stolen and, therefore, to allow the police to seize them pursuant to the plain view doctrine.

The defendant argues strenuously that there is a third requirement for application of the plain view doctrine: that the police discover the seized items inadvertently. He claims that the discovery in this case may not be characterized as inadvertent since the police entered his garage intending to conduct a rigorous and painstaking search. We reject the defendant's contention. "There has been extensive dispute in the United States Supreme Court; see *Texas* v. *Brown,* 460 U.S. 730, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983); *Coolidge* v. *New Hampshire,* 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed.

2d 564 (1971); over whether a third requirement, that the police discover the items inadvertently, should be applied. While this area has not been definitively resolved, it is clear that in Connecticut 'inadvertence is not required if the items seized fall under the category of contraband, stolen property or objects dangerous in themselves.' *State* v. *Couture,* 194 Conn. 530, 547, 482 A.2d 300, cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1984)." *State* v. *Hobson,* supra, 18 n.7. Accordingly, the police were entitled to seize the trucks pursuant to the plain view doctrine.[5]

The defendant's second claim is that the negative characterization of him during closing argument by the assistant state's attorney was so prejudicial that it deprived him of his right to a fair trial. The state claims that the court should not review this ground of error because the defendant did not object to the remarks at trial. We agree with the state's assertion. "Ordinarily, where a criminal defendant does not object and take exception to allegedly prejudicial remarks of the state's attorney, either at the time they were made or at the close of argument, he waives his right to press the claimed error on appeal. *State* v. *Lubesky,* 195 Conn. 475, 484, 488 A.2d 1239 (1985); *State* v. *Malley,* 167 Conn. 379, 387, 355 A.2d 292 (1974). Where counsel fails to object or to request a curative charge 'we have presumed that defense counsel did not view the remarks as so prejudicial that his client's right to a fair trial was seriously jeopardized. *State* v. *Lubesky,* supra; *State* v. *Falcone,* 191 Conn. 12, 23 n.13, 463 A.2d 558 (1983).' *State* v. *Tyler-Barcomb,* 197 Conn. 666, 673, 500 A.2d 1324 (1985)." *State* v. *Chace,* 199 Conn. 102, 108, 505 A.2d 712 (1986). This assumption is reinforced by the defendant's failure to include the claim in his

---

[5] Having determined that the January 8 search was lawful, we have also disposed of the defendant's other claim: that the trial court erred by not suppressing the items seized during the later search of his garage.

preliminary statement of the issues as is required by Practice Book § 3012. This court has previously shown a disinclination to review claims that do not comply with the mandates of that section. *State* v. *DiStefano,* 7 Conn. App. 726, 727 n.1, 510 A.2d 995 (1986); *Wadsworth* v. *Zahariades,* 1 Conn. App. 373, 375 n.4, 472 A.2d 29 (1984). After a careful review of the record, we see no reason to ignore the general rule. Under these circumstances, we conclude that the defendant waived his right to raise this claim.[6]

Similarly, the defendant failed to include his third issue, that the trial court erred in allowing amendments to the information[7] during trial, in his preliminary statement of the issues. We, therefore, decline to review this claim as well.

The defendant's final claim is that the trial court erred in denying his motion for judgment of acquittal based on the alleged insufficiency of the evidence. To obtain a conviction under General Statutes §§ 53a-119 (8) and 53a-123 (a) (1), the state was required to prove beyond a reasonable doubt that the defendant, with the knowledge or belief that it had probably been stolen, received, retained or disposed of a stolen motor vehicle having a value of two thousand dollars or less. According to the defendant, the state failed to prove two of these elements: that what he received, retained or disposed of was a "motor vehicle" as defined by General Statutes § 14-1 (30), and that the value of the vehicle that formed the basis for the

---

[6] By this holding, we are in no way indicating approval of the comments made by the assistant state's attorney. It is elementary that "[t]he prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence. . . ." *State* v. *Gold,* 180 Conn. 619, 659, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980), quoting ABA Standards Relating to the Prosecution Function and the Defense Function § 5.8 (d) (1971).

[7] There were two informations, each of which was amended. See footnote 1, supra.

charge was *less* than $2000. " 'Appellate review of such a claim requires us to undertake a two step analysis. "We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt." *State* v. *Sinclair,* 197 Conn. 574, 576, 500 A.2d 539 (1985).' *State* v. *Brown,* 198 Conn. 348, 352, 503 A.2d 566 (1986)." *State* v. *Hobson,* supra, 23–24. Having carefully reviewed the record, we find that the jury could reasonably have concluded that the state had met its burden of proving the defendant guilty of each charge beyond a reasonable doubt.

The defendant first claims that the state did not introduce sufficient evidence to prove that what he received, retained or disposed of was a motor vehicle, that is, "any vehicle propelled or drawn by any nonmuscular power." General Statutes § 14-1 (30). The essence of this claim is that the defendant was convicted on one count of the information based on his possession of the bed of a red pickup. Since the bed of a truck alone cannot be propelled, the defendant argues that it cannot be considered a motor vehicle, and his conviction on this count, therefore, cannot stand. Even if we assume, arguendo, that the definition contained in General Statutes § 14-1 (30) controls, the defendant's argument must fail. In reaching a verdict, the jury is entitled to draw all reasonable and logical conclusions that are supported by the evidence. *State* v. *Little,* 194 Conn. 665, 673, 485 A.2d 913 (1984). Here, the police found the bed of the truck in the midst of what appeared to be a chop shop, an operation where vehicles are disassembled and sold for parts. Under these circumstances, the jury could quite reasonably and logically conclude,

solely on the basis of the presence of the bed of the truck, that the defendant, at one point, received, retained or disposed of the motor vehicle of which it was a part.

The defendant's final claim is that the state failed to prove the element of value necessary for the crime beyond a reasonable doubt. General Statutes § 53a-123 (a) provides in part that "[a] person is guilty of larceny in the second degree when he commits larceny as defined in section 53a-119 and: (1) The property consists of a motor vehicle, the value of which is *two thousand dollars or less.*" (Emphasis added.) The defendant asserts that the only testimony as to the value of the vehicles he was charged with receiving, retaining or disposing of established that each vehicle was worth more than $2000. He argues, therefore, that his conviction for larceny in the second degree can not stand.

We disagree with the defendant's creative reading of General Statutes § 53a-123. When construing a statute, a court must try to discern what the legislature intended in enacting it. *Landry* v. *Personnel Appeal Board,* 138 Conn. 445, 447, 86 A.2d 70 (1952). If the language of the statute alone does not clearly indicate intent, intent must be determined "by considering [the statute] in the light of all of its provisions, the object which it seeks to accomplish, the pre-existing legislation upon the same subject matter, and all other relevant circumstances." Id. When General Statutes § 53a-123 is analyzed in the light of the other provisions of the larceny statutes, its meaning becomes clear. Under General Statutes § 53a-122 (a) (3), a person who commits larceny of a motor vehicle is guilty of larceny in the first degree if the value of the vehicle *exceeds two thousand dollars.* Reading that statute together with General Statutes § 53a-123, we conclude that the latter does not establish a ceiling for prosecution for

larceny in the second degree but, rather, provides a floor for prosecutions for larceny in the first degree. When the value of a stolen motor vehicle *exceeds* $2000 dollars, the individual who received, retained or disposed of it may be prosecuted for larceny in the first degree. We see nothing in the language, structure or history of the larceny statutes which indicates that he may not instead be prosecuted for larceny in the second degree, especially where, as here, the value determination is not a yardstick measure.

Such an interpretation of General Statutes § 53a-123 is supported by logic and common sense. By proving that the value of each vehicle involved exceeded $2000, the state necessarily and unequivocally proved that they were worth $2000 and all lesser amounts. " 'When two constructions are possible, courts will adopt the one which makes the [statute] effective and workable, and not one which leads to difficult and possibly bizarre results.' *Muller* v. *Town Plan & Zoning Commission,* 145 Conn. 325, 331, 142 A.2d 524 (1958)." *Maciejewski* v. *West Hartford,* 194 Conn. 139, 152, 480 A.2d 519 (1984). The trial court did not err in denying the defendant's motion for judgment of acquittal.

There is no error.

In this opinion the other judges concurred.