STATE OF CONNECTICUT *v.* JOSEPH N. TULLI
(5919)

SPALLONE, BIELUCH and STOUGHTON, Js.

Argued December 16, 1987—decision released May 3, 1988

*Michael Graham,* for the appellant (defendant).

*John F. Cocheo,* assistant state's attorney, with whom, on the brief, was *C. Robert Satti, Sr.,* state's attorney, for the appellee (state).

SPALLONE, J. The defendant appeals from the judgment of conviction, following a conditional plea of nolo

contendere[1] to an amended information charging him with illegal possession of a narcotic substance (cocaine) with the intent to sell; General Statutes § 21a-277 (a); illegal possession of under four ounces of a cannabis-type substance; General Statutes § 21a-279 (c); and possession of drug paraphernalia. General Statutes § 21a-267 (a).

The defendant contends that the trial court erred (1) in its denial of his motion to suppress evidence on the grounds that the search warrant failed to establish probable cause, and (2) in its denial of his motion to suppress evidence filed on the basis of alleged violations of the statutory requirements for the application, execution and return of a search warrant.[2] We find no error.

I

The defendant first claims that the affidavit accompanying the search warrant application failed to contain any statement indicating the reliability of the confidential informant used by the police; thus the warrant should not have issued for lack of probable cause. We do not find any merit to this claim.

[1] "[General Statutes] Sec. 54-94a. CONDITIONAL NOLO CONTENDERE PLEA. APPEAL OF DENIAL OF MOTION TO SUPPRESS OR DISMISS. When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

[2] A third claim, that the court erred in its denial of a full evidentiary hearing regarding alleged material misrepresentations or omissions in the affidavits supporting the search warrant, was withdrawn by counsel for the defendant at oral argument.

Although we must agree that a statement regarding the reliability of an informant is generally required in a search warrant application; *Aguilar* v. *Texas,* 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); the absence of such a statement is not an immediate death knell for the search warrant. Just as an affiant's unadorned and conclusory assertion of the reliability of a confidential informant may be insufficient to establish informant credibility; *State* v. *Salz,* 8 Conn. App. 125, 132 n.3, 512 A.2d 921, cert. denied, 201 Conn. 807, 515 A.2d 380 (1986); so it is that the failure to include such a bald assertion does not automatically preclude a finding of credibility. The standard which must be met, rather, is that exemplified by the well-known *Aguilar-Spinelli* test.[3]

"The *Aguilar-Spinelli* test for reviewing a magistrate's finding of probable cause consists of two prongs: ' "The issuing [judge] must be informed of (1) some of the underlying circumstances relied on by the person providing the information to the affiant; and (2) some of the underlying circumstances from which the affiant concluded (a) that the informant, whose identity need not even be disclosed, was credible, or (b) that his information was reliable." ' *State* v. *Delmonaco,* 194 Conn. 331, 338, 481 A.2d 40, cert. denied, 469 U.S. 1036, 105 S. Ct. 511, 83 L. Ed. 2d 401 (1984), [quoting] *State* v. *Jackson,* 162 Conn. 440, 446, 294 A.2d 517, cert. denied, 409 U.S. 870, 93 S. Ct. 198, 34 L. Ed. 2d 121 (1972)." *State* v. *Morrill,* 205 Conn. 560, 566, 534

---

[3] *Spinelli* v. *United States,* 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969); *Aguilar* v. *Texas,* 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964). Under article first, § 7, of our state constitution, a finding of probable cause must conform to the *Aguilar-Spinelli* two-prong analysis. *State* v. *Kimbro,* 197 Conn. 219, 496 A.2d 498 (1985). Our previous determinations that the *Kimbro* holding governs searches made pursuant to a warrant as well as to warrantless searches; see, e.g., *State* v. *Salz,* 8 Conn. App. 125, 512 A.2d 921 (1986); *State* v. *Ralston,* 7 Conn. App. 660, 510 A.2d 1346 (1986); have been recently supported by our Supreme Court. *State* v. *Morrill,* 205 Conn. 560, 565–66, 534 A.2d 1165 (1987) (applying *Aguilar-Spinelli* analysis to search authorized by warrant).

A.2d 1165 (1987). The defendant here challenges only the sufficiency of the affidavit in regards to the second prong of the test—that the informant was credible in general, or that the information given in this particular instance was reliable. See *State* v. *Garcia,* 7 Conn. App. 354, 358, 508 A.2d 824 (1986). Because, in this case, there was no claim that the informant had a "track record" of providing reliable information, which is how part (a) of the second prong is most often satisfied, we proceed directly to part (b). "[I]t is only necessary that *either* part (a) or part (b) of this prong be satisfied . . . ." (Emphasis added.) *State* v. *Morrill,* supra, 567.

It is axiomatic that an informant's reliability may be established in alternate ways. *Spinelli* v. *United States,* 393 U.S. 410, 417–18, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969). "Three of the most common factors to evaluate the reliability of an informant tip are (1) corroboration of the information of the police, (2) declarations against penal interest by the informant-declarant, and (3) the reputation and past criminal behavior of the suspect." *State* v. *Ferguson,* 185 Conn. 104, 113, 440 A.2d 841 (1981).

On the basis of our detailed review of the affidavit accompanying the search warrant, we find that sufficient indicia of the reliability of the informant exists in the warrant application. The following pertinent information was included in the affidavit: In early May of 1986, the confidential informant reported to the affiants that he knew of a white male by the name of Joe Tulli who was selling large amounts of cocaine from his first floor apartment at 98 Chestnut Street, Norwich. The informant stated that he had purchased cocaine from the defendant on numerous occasions during the three months prior to his meeting with the affiants. The informant described the defendant as being a white male, 5 feet, 9 inches tall, 250 pounds, with brown hair and brown eyes.

In the two weeks following this first interview, the affiants and the informant arranged two controlled purchases of cocaine from the defendant. Both were conducted at the defendant's residence at 98 Chestnut Street. After the completion of each transaction, a field test conducted on a portion of the white powder purchased from the defendant resulted in findings which indicated the presence of cocaine. These findings were later verified by the state toxicology laboratory. In addition, as a result of their own investigation, the affiants discovered that a Joseph N. Tulli was currently receiving mail addressed to him at 98 Chestnut Street, and that the defendant had been previously arrested and convicted twice on two separate narcotics-related violations.

Applying this information to the three factors espoused by *State* v. *Ferguson,* supra, yields the following conclusions. First, the police were able to corroborate the informant's tip concerning the description of the defendant himself, the description of his residence and the fact that he was currently residing there, evidenced by the fact that he was receiving mail at that location. In addition, and perhaps most importantly, the police corroborated the informant's statements concerning the defendant's involvement in illegal narcotics sales by engaging in two separate controlled purchases from the defendant, both of which resulted in the informant's purchase of a substance which tested positively for cocaine.[4] "Where many significant portions of a statement of an informant have been verified from independent reliable sources, it may be reasonable to infer

---

[4] It has been previously found that "the reliability of an informer [can be] bolstered by testing the suspected narcotics (before the warrant [is] sought) to see if, in fact, it was narcotics. . . ." *State* v. *Ferguson,* supra, 114 n.7, citing *Commonwealth* v. *Stewart,* 358 Mass. 747, 752, 267 N.E.2d 213 (1971). Other jurisdictions have held that a controlled buy can establish an informant's reliability and veracity. See, e.g., *State* v. *Arnold,* 214 Neb. 769, 336 N.W.2d 97 (1983); *People* v. *Larson,* 128 Mich. App. 552, 340 N.W.2d 324 (1983).

the accuracy of the remainder. *State* v. *Ferguson,* [supra,] 113; *State* v. *Jackson,* [supra,] 447." (Citations omitted.) *State* v. *Daley,* 189 Conn. 717, 721, 458 A.2d 1147 (1983); see also *State* v. *Morrill,* supra, 567–68.

Second, while relating his information to the police, the confidential informant admitted that he had made numerous purchases of cocaine from the defendant. This was clearly a statement against the informant's penal interest. "Declarations against penal interest by the informant-declarant are another factor used to evaluate the reliability of an informant's information. 'Common sense in the important daily affairs of life would induce a prudent and disinterested observer to credit these statements. People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime . . . carry their own indicia of credibility.' *United States* v. *Harris,* 403 U.S. 573, 583, 91 S. Ct. 2075, 29 L. Ed. 2d 723 (1971). Statements against penal interest . . . 'may be a substantial basis for crediting an informant's tip and may be considered by an issuing authority in a warrant proceeding.' *State* v. *Ferguson,* supra, 115." *State* v. *Just,* 185 Conn. 339, 368–69, 441 A.2d 98 (1981).

Third, and finally, the two earlier narcotics-related convictions of the defendant can properly be considered when determining the reliability of an informant's tip. "[T]he prior arrest record, pertaining as it did to the reputation of the defendant, clearly was ' "a practical consideration of everyday life" upon which an officer (or a magistrate) may properly rely in assessing the reliability of an informant's tip.' *United States* v. *Harris,* supra, 583." *State* v. *Romano,* 165 Conn. 239, 246, 332 A.2d 64 (1973); see also *United States* v. *Canestri,* 518 F.2d 269, 272 (2d Cir. 1975); *State* v. *Ferguson,* supra, 115.

In conclusion, although the presence of only one of the factors suggested by *State* v. *Ferguson,* supra, may or may not support a finding of probable cause, surely the presence of all three factors justifies the issuance of a search warrant. It must be remembered that "[p]robable cause is not ordinarily produced as one piece of precast concrete. It is a 'mosaic'; *State* v. *Abbott,* 5 Conn. App. 441, 445, 499 A.2d 437 (1985); which is established by fitting pieces of information together so that they can ultimately convince a magistrate that there ' "is a fair probability [of] proscribed activity". . . .' Id., 446." *State* v. *Ralston,* 7 Conn. App. 660, 682, 510 A.2d 1346 (1986). Each case must be tested on its own when determining whether sufficient indicia of facts and circumstances exist to support the judge's finding of probable cause and his ultimate decision to issue the warrant; *State* v. *Jackson,* supra, 452; and that finding of probable cause "should be paid great deference by reviewing courts." *State* v. *Just,* supra, 369, citing *Jones* v. *United States,* 362 U.S. 257, 270–71, 80 S. Ct. 725, 4 L. Ed. 2d 697 (1960); *State* v. *Ferguson,* supra, 118; *State* v. *Bember,* 183 Conn. 394, 412, 439 A.2d 387 (1981).

## II

The defendant's second claim of error can be handled more expeditiously than the first. The defendant claims that the search warrant in this case was applied for, executed and returned to the court in variance with the requirements of General Statutes §§ 54-33a et seq.[5]

First, the defendant claims that the warrant was not executed within the time frame established by General

---

[5] At oral argument, the state explained its failure to brief this claim by arguing that this claim was unavailable to the defendant in this court because he did not raise it in the trial court and made no showing that it is reviewable under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973). This is an inaccurate reading of the trial court record. The defendant's motion to suppress specifically presented this claim to the trial court.

Statutes § 54-33a (c) or by § 54-33c.[6] Read together, these sections provide that after the issuance of a warrant, the search should be conducted within a reasonable time, but no longer than ten days may pass before the warrant is executed. The warrant in this case was issued on May 15, 1986 and the search was performed on May 23, 1986—a total of nine days, inclusive, intervened. There is clearly no merit to the claim, whether based on statutory or constitutional grounds, that this

---

[6] General Statutes § 54-33a (c) provides: "A warrant may issue only on affidavit sworn to by the complainant or complainants before the judge and establishing the grounds for issuing the warrant, which affidavit shall be part of the arrest file. If the judge is satisfied that grounds for the application exist or that there is probable cause to believe that they exist, he shall issue a warrant identifying the property and naming or describing the person, place or thing to be searched. The warrant shall be directed to any police officer or a regularly organized police department or any state policeman or to a conservation officer, special conservation officer or patrolman acting pursuant to section 26-6. It shall state the grounds or probable cause for its issuance *and it shall command the officer to search within a reasonable time* the person, place or thing named, for the property specified." (Emphasis added.)

General Statutes § 54-33c provides: "EXECUTION AND RETURN OF WARRANT. COPY OF AFFIDAVIT TO BE GIVEN TO OWNER, OCCUPANT OR PERSON NAMED IN WARRANT; EXCEPTIONS. *The warrant shall be executed within ten days and returned with reasonable promptness consistent with due process of law and shall be accompanied by a written inventory of all property seized.* A copy of such warrant shall be given to the owner or occupant of the dwelling, structure, motor vehicle or place designated therein, or the person named therein. Within forty-eight hours of such search, a copy of the application for the warrant and a copy of all affidavits upon which the warrant is based shall be given to such owner, occupant or person. The judge may, by order, dispense with the requirement of giving a copy of the affidavits to such owner, occupant or person at such time if the applicant for the warrant files a detailed affidavit with the judge which demonstrates to the judge that (1) the personal safety of a confidential informant would be jeopardized by the giving of a copy of the affidavits at such time, or (2) the search is part of a continuing investigation which would be adversely affected by the giving of a copy of the affidavits at such time, or (3) the giving of such affidavits at such time would require disclosure of information or material prohibited from being disclosed by chapter 959a. If the judge dispenses with the requirement of giving a copy of the affida-

warrant was not executed in a timely manner. See *State v. Burgos,* 7 Conn. App. 265, 271, 508 A.2d 795 (1986).

Second, the defendant contends that, after its execution, the warrant was not returned to the court "with reasonable promptness consistent with due process of law," as is required by § 54-33c. The defendant alleges that the warrant and the inventory of items seized was not returned to the court until after July 14, at the very earliest—nearly two months after its execution.

Our review of the record and transcripts reveals only the following facts: (1) that the inventory list compiled by the police after the search was dated May 27, 1986, four days after the search; and (2) on July 28, 1986, the defendant moved for the search warrant and attendant papers to be unsealed and that the motion was granted, and the documents unsealed, on that day. No further information concerning the whereabouts of the warrant or of the date it was returned to the court can be found in the record.

Even if we were to accept the defendant's allegation that the warrant was not returned to court until two months after its execution, and even if we were to agree that that span of time was "unreasonable" within the meaning of § 54-33c, we could not find reversible error because of the defendant's failure to show how he was prejudiced by such a delay. In fact, the record clearly reflects that the defendant made no effort to obtain a copy of the warrant or inventory until July 28, 1986, and that, when the defendant did so move for a copy of the documents on that date, he was provided with

vits at such time, such order shall not affect the right of such owner, occupant or person to obtain such copy at any subsequent time." (Emphasis added.)

In accordance with § 54-33c, the officers applying for the search warrant asked the court to dispense with the requirement of immediately releasing a copy of the warrant and accompanying affidavits. The court granted this request and the warrant was ordered sealed.

them. On the basis of these facts, we find no merit to the defendant's claim. See, e.g., *State* v. *Gonzalez,* 197 Conn. 677, 681, 500 A.2d 1330 (1985); *State* v. *Milum,* 197 Conn. 602, 616, 500 A.2d 555 (1985).

There is no error.

In this opinion the other judges concurred.