STATE OF CONNECTICUT *v.* CLIFFORD COOPER
(3188)

BORDEN, DALY and BIELUCH, Js.

Argued June 11—decision released September 2, 1986

*Gil Davis,* with whom were *Frank McCoy* and, on the brief, *John P. McKeon,* for the appellant (defendant).

*Michael E. O'Hare,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, *James G. Clark,* deputy assistant state's attorney, and *Peter Ponziani,* former assistant state's attorney, for the appellee (state).

BORDEN, J. The defendant appeals from a judgment of conviction, after a trial to the court, of disorderly conduct in violation of General Statutes (Rev. to 1981) § 53a-182, possession of a controlled substance in violation of General Statutes § 19-481 (c), and four counts of bribery in violation of General Statutes § 53a-147. The defendant claims that the trial court erred by denying his motion to suppress evidence obtained pursuant to a warrantless search and by proceeding in his absence on the second day of trial. The principal issues are (1) whether the warrantless search of the defendant's coat, located in the trunk of his friend's car, was valid, and (2) whether the exclusionary rule bars the use of illegally seized evidence which the defendant later used to commit bribery of the police officers involved in the invalid search.

The conviction for disorderly conduct resulted from a disturbance which the defendant caused at the apartment of his former girlfriend on the evening of February 16, 1982. The conviction for possession of a controlled substance resulted from a subsequent search of the defendant's coat which occurred when the police arrested him later that same evening on the charge of disorderly conduct. That search yielded $4900 in cash and a quantity

of marihuana. The conviction on the bribery charge resulted from the suggestions by the defendant, at the scene of the arrest and at the police station, to four police officers that they take the cash for themselves and dispose of the marihuana.

I

We first address the defendant's claim that the court erred by proceeding with the trial in his absence. Although the defendant did not raise this claim in the trial court, our Supreme Court has held that such a claim is reviewable under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973). *State* v. *Simino,* 200 Conn. 113, 124–25, 509 A.2d 1039 (1986). We therefore review the defendant's claim, but find it to be without merit.

The court trial began in Manchester on December 16, 1983. At the end of the first day, in the presence of the defendant, the court continued the trial until 2 p.m. on December 20, 1983. At 2:30 p.m. on December 20, 1983, the defendant had not arrived in court. His counsel stated to the court that the defendant had been required to appear in the federal court in Bridgeport that morning but that he had been released at noon. His counsel further stated that he had no explanation for the defendant's absence and that "I'm ready to proceed without him." The court ordered the trial to proceed. After the state called three additional witnesses, it rested. The defendant's counsel presented one witness. The court then continued the case to 2 p.m. the next day. When the trial resumed the next day, the defendant was present. He neither offered an explanation for his absence nor took any action to express dissatisfaction with the court's earlier decision to proceed in his absence. He called three additional witnesses and then rested. It is quite clear from this record that the court was correct in its determination that the defendant effectively waived his right to be present at

a part of his trial by his unexcused and unexplained absence. *State* v. *Simino,* supra, 126–32; see also *State* v. *Lineberry,* 7 Conn. App. 532, 536, 509 A.2d 84 (1986).

This claim of the defendant, which we have rejected, is the only claim which implicates the conviction of disorderly conduct. We therefore find no error as to that conviction.

## II

We next address the defendant's claim that the court should have granted his motion to suppress as evidence the cash and marihuana seized from his coat. We conclude that the court did err by denying this motion, but that this was error only with respect to the charge of possession of a controlled substance, and was not error with respect to the four bribery charges. We make this distinction because of our further conclusion that to suppress the evidence as to the bribery charges would exceed the proper limits of the exclusionary rule. See part III, infra.

On the basis of the evidence presented at the suppression hearing, the trial court found the following facts: In the early evening hours of February 16, 1982, Thomas Therian loaned his automobile to a friend, Diana Rutigliano, who drove it, with the defendant as a passenger, to one or more bars in East Hartford. While at the Bootlegger's Cafe, Rutigliano gave the defendant the key to the trunk of the car and he placed his overcoat in the trunk, which he then locked. Later that evening, Rutigliano and the defendant returned to Therian's apartment in East Hartford. Shortly thereafter, the defendant visited his former girlfriend, Christine Governale, who resided in an apartment in the same building as Therian. The defendant threatened Governale with bodily harm and then left the area with Therian in Therian's car.

Meanwhile, Governale contacted the East Hartford police department and Officer Joseph Albuquerque investigated the complaint at her home. Governale told Albuquerque that the defendant threatened her, that he might have a gun in his possession and that he may have been involved in drug activity that evening. Governale had known the defendant for six years and she has a child by him. Albuquerque conveyed this information to police headquarters along with a description of the automobile in which the defendant was riding.

The arresting officer heard the radio dispatch from headquarters indicating that the defendant was wanted on the charge of disorderly conduct. The radio dispatch included a description of Therian's automobile and instructions to check the car for weapons or drugs. Acting on this information, the arresting officer stopped and searched Therian's automobile. The defendant was then a passenger. During the search, the officer located $4900 in cash and a quantity of marihuana in the inside pocket of the defendant's coat, which was in the trunk of the automobile. These items were seized and it was these items which the defendant sought to suppress.

The trial court further found that the defendant had no possessory or proprietary interest in the automobile in that he did not own it and it was not loaned to him. The defendant did not have the owner's permission to place anything in the trunk of the car, did not have control over the automobile and had no right to exclude anyone from the area searched. The court also found that the defendant felt that the money and the package containing contraband would be secure in the trunk of the automobile. Further, the court found that the defendant acknowledged a property interest in those items.

On the basis of these factual findings, the court concluded that the arresting officer had probable cause to

stop the automobile and to arrest the defendant.[1] The court found that the defendant had not established a violation of his legitimate expectation of privacy so as to afford him the protection of the fourth amendment. The court also concluded that the search of Therian's automobile was based on probable cause and was consistent with the criteria set forth in *United States* v. *Ross,* 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982). Accordingly, the court denied the defendant's motion to suppress and the challenged items were subsequently introduced into evidence at trial.

On appeal, the defendant claims that the trial court erred in its conclusion that the police had probable cause to conduct the search. We agree that the search of the defendant's coat and the seizure of the cash and marihuana in it were invalid.

"A person may not object to the introduction of evidence resulting from an illegal search unless he first proves that he was a victim of that search. *Rawlings* v. *Kentucky,* 448 U.S. 98, 104, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980). One is a victim of a search when it violates his reasonable expectation of privacy in the area searched. *Rakas* v. *Illinois,* 439 U.S. 128, 143, 99 S. Ct. 421, 58 L. Ed. 2d 387, reh. denied, 439 U.S. 1122, 99 S. Ct. 1035, 59 L. Ed. 2d 83 (1978)." *State* v. *Daay,* 5 Conn. App. 496, 498, 500 A.2d 248 (1985). "Whether a person has a reasonable expectation of privacy in an area involves a two part inquiry: (1) whether the individual has exhibited a subjective expectation of privacy; and (2) whether that expectation is one that society is prepared to recognize." *State* v. *Santiago,* 8 Conn. App. 290, 300, 513 A.2d 710 (1986).

The defendant manifested a subjective expectation of privacy by securing his coat and its contents in the locked trunk of Therian's car. Clearly, the defendant

---

[1] The defendant does not challenge the validity of the arrest.

"had no reasonable expectation of privacy in [Therian's] car and could not, therefore, object to the introduction of evidence gathered as a result of a search of the car." *State* v. *Mitchell,* 7 Conn. App. 46, 70, 507 A.2d 1017 (1986). "Although the defendant cannot challenge the search of [Therian's car], he is not precluded from contesting the search of his [coat], since by virtue of his ownership and the nature of the item, he possesses [a legitimate] . . . expectation of privacy in it." *State* v. *Callari,* 194 Conn. 18, 24, 478 A.2d 592 (1984), cert. denied, 469 U.S. 1210, 105 S. Ct. 1178, 84 L. Ed. 2d 327 (1985) (although the defendant could not challenge the search of a house in which he was but a transient social guest, he could challenge the search of his own suitcase located within that house).

Although a property interest is not an absolute prerequisite to a finding of a reasonable expectation of privacy in an item or area searched; *State* v. *McLucas,* 172 Conn. 542, 546–48, 375 A.2d 1014, cert. denied, 434 U.S. 855, 98 S. Ct. 174, 54 L. Ed. 2d 126 (1977); "one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of his right to exclude." *State* v. *Santiago,* supra; cf. *Rakas* v. *Illinois,* supra, 130–31 n.1 (the defendants failed to claim an ownership interest in seized items); *State* v. *Daay,* supra, 498–99. We conclude, therefore, that the defendant possessed a legitimate expectation of privacy in his overcoat, which was placed in the locked trunk of Therian's automobile.[2]

Having concluded that the defendant's expectation of privacy entitled him to challenge the search of the coat, we next consider whether the warrantless search was "justified and thus constitutional because it was within an exception to the warrant requirement." *State*

---

[2] This conclusion is further buttressed by the assertion of the state in its brief that "[t]he coat should . . . be considered a container for the purposes of this Court's analysis."

v. *Zindros,* 189 Conn. 228, 236, 456 A.2d 288 (1983), cert. denied, 465 U.S. 1012, 104 S. Ct. 1014, 79 L. Ed. 2d 244 (1984). The trial court concluded, and the state argues on appeal, that the search and seizure of the defendant's coat was justified on the basis that there was probable cause to believe that Therian's car contained contraband. Thus, the state argues, the search and seizure falls within the confines of the probable cause automobile exception to the warrant requirement articulated by *United States* v. *Ross,* supra. We disagree.

In *Ross,* the United States Supreme Court held that where the police have probable cause to believe that contraband is concealed somewhere within a car which they have legitimately stopped, they may thoroughly search the car and all containers in it.[3] With regard to the issue of whether the trial court correctly concluded that the warrantless search was justified as based on probable cause, "we must determine whether [this conclusion is] legally and logically correct and whether [it finds] support in the facts set out in the memorandum of decision . . . ." *State* v. *Zindros,* supra, 238. Whether this claim is reviewed under the federal "totality of the circumstances" standard; *Illinois* v. *Gates,* 462 U.S. 213, 241–46, 103 S. Ct. 2317, 76 L. Ed. 2d 527, reh. denied, 463 U.S. 1267, 104 S. Ct. 33, 77 L. Ed. 2d 1453 (1983); or under our more stringent

---

[3] We note that no claim has been made that the search was justified as incident to a lawful arrest. See *New York* v. *Belton,* 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981). Our inquiry is thus limited to the theory on which the case was tried and decided in the trial court and briefed and argued in this court. *State* v. *Martin,* 2 Conn. App. 605, 612B, 482 A.2d 70 (1984), cert. denied, 472 U.S. 1009, 105 S. Ct. 2706, 86 L. Ed. 2d 721 (1985). It does not appear, moreover, that *Belton* would help the state in this case. In *Belton,* the Supreme Court expanded the scope of a search incident to the lawful custodial arrest of an occupant of a car to include all containers, including clothing, located within the *passenger* compartment of the car. Id., 460. The defendant's coat in this case was located in the trunk of the car, an area not reached by *Belton.*

state constitutional standard; *State* v. *Kimbro,* 197 Conn. 219, 236, 496 A.2d 498 (1985); we cannot conclude that the trial court's finding of probable cause is supported by the facts set out in the memorandum of decision.

" 'Probable cause means more than mere suspicion. There must be facts and circumstances within the officer's knowledge, and of which he has trustworthy information, sufficient to justify the belief of a reasonable person that an offense has been or is being committed. . . . There is often a fine line between mere suspicion and probable cause, and "[t]hat line necessarily must be drawn by an act of judgment formed in the light of the particular situation and with account taken of all the circumstances." ' . . . In the context of a search, there must be probable cause to believe that the material to be seized is connected with criminal activity or will assist in a particular apprehension or conviction, and that the material will be found in the place to be searched." (Citation omitted.) *State* v. *Martin,* 2 Conn. App. 605, 612B–13, 482 A.2d 70 (1984), cert. denied, 472 U.S. 1009, 105 S. Ct. 2706, 86 L.Ed. 2d 721 (1985). "Moreover, the probable-cause determination must be based on objective facts that could justify the issuance of a warrant by a magistrate and not merely on the subjective good faith of the police officers. . . . '[G]ood faith is not enough to constitute probable cause. That faith must be grounded on facts within the knowledge of the [officer], which in the judgment of the court would make his faith reasonable.' " *United States* v. *Ross,* supra, 808.

In the present case, the arresting officer who conducted the search was not the officer who investigated Governale's complaint. The arresting officer was acting upon information received by radio transmission which originated with Albuquerque, the investigating

officer. The basis of the finding of probable cause, therefore, is the information obtained from Governale by Albequerque.

The facts set out in the trial court's memorandum of decision indicate that Governale merely told Albuquerque that the defendant *"might* have a gun in his possession and that he *may* have been involved in drug activity that evening." (Emphasis added.) Although these statements formed "a permissible starting point"; *State* v. *Martin,* supra, 613; this information alone does not suffice "to raise the totality of the circumstances from the level of suspicion to the level of probable cause." Id. In its brief, the state seeks to bolster the court's findings by including factual details which the court did not find as facts. "Suffice it to say that the court issued a factually detailed memorandum of decision which did not refer to this evidence. When the court rules on a motion to suppress without detailing the facts supporting its decision, an appellate court may look to the evidence produced in support of the ruling. See, e.g., *State* v. *Jones,* 193 Conn. 70, 475 A.2d 1087 (1984). But where, as here, the trial court performs its judicial function conscientiously by detailing the facts which the state has established, we are not free to add facts which are not found and which are not undisputed. See *State* v. *Perez,* 181 Conn. 299, 302–303, 435 A.2d 334 (1980). We thus address this search shorn of those 'facts' which the state seeks to add." Id., 614.

We agree with the state's characterization of Governale as a reliable source based on the extent of her past relationship with the defendant. The state misstates the facts, however, when it argues that the police had information from Governale that the defendant *was armed* and that he *had been involved* with drugs. The trial court's findings reveal a much more tenuous and speculative basis of information than the state's argument posits. At best, the court's factual findings are

merely stated in terms of possibilities, rather than probabilities.[4] While we recognize that "[p]robable cause is a fluid concept"; *Illinois* v. *Gates, supra,* 231–32; that concept, nevertheless, "[turns] on the assessment of *probabilities* in particular factual contexts . . . ." (Emphasis added.) Id., 232.

"The scope of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *United States* v. *Ross, supra,* 824. "[T]he suspicion of the [East Hartford] police that the defendant *might* have [a weapon or drugs] in the vehicle does not amount to probable cause." (Emphasis added.) *State* v. *Badgett,* 200 Conn. 412, 430, 512 A.2d 160 (1986). Therefore, the search of the defendant's overcoat in the trunk of the automobile in which he was riding exceeded the scope of warrantless searches of automobiles permitted by law. Id.[5]

We next consider whether the search and seizure was justified, as the state argues, because it was conducted to ensure the safety of the general public. In this regard, the state relies principally on *Cady* v. *Dombrowski,* 413 U.S. 433, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973). We conclude that the facts found by the trial court did not justify the search and seizure on this basis.

---

[4] Our review of the transcript of the suppression hearing reveals that all that Governale said to Albuquerque was that which the trial court found.

[5] This conclusion also disposes of the state's argument that the search and seizure of the defendant's coat was justified based on the "exigent circumstances" exception to the warrant requirement. That exception, like the automobile exception, also requires probable cause. See *Chambers* v. *Maroney,* 399 U.S. 42, 47 n.6, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970); *State* v. *Runkles,* 174 Conn. 405, 412, 389 A.2d 730, cert. denied, 439 U.S. 859, 99 S. Ct. 177, 58 L. Ed. 2d 168 (1978).

In *Cady,* police officers of West Bend, Wisconsin, had towed a disabled car which had been rented to the defendant, a Chicago, Illinois, policeman. The defendant, who was drunk, had been involved in an accident with the car. "The Wisconsin policemen believed that Chicago police officers were required by regulation to carry their service revolvers at all times." Id., 436. The Wisconsin policemen searched the car without a warrant and found evidence linking the defendant to a murder. The Supreme Court held that the evidence was properly obtained because, as part of their "community caretaking functions"; id., 441; the police had exercised "a form of custody and control over" the car and because the search of the trunk of the car for the defendant's service revolver was standard procedure "to protect the public from the possibility that a revolver would fall into untrained or perhaps malicious hands." Id., 443. Neither of these factors, which the Court emphasized in its conclusion that the search was reasonable, is present in this case. The East Hartford police did not take custody or control over Therian's car; Therian was present as its driver and was not under arrest. Nor was there any showing by the state that the search of the trunk or of the defendant's coat for what they only *suspected* to be there was made pursuant to standard procedure to protect the public's safety.[6]

This was a warrantless search aimed at discovering a gun or drugs which was made on less than probable

---

[6] The state does not argue and therefore we do not consider whether the search of the defendant's coat was justified as a kind of on-site accelerated inventory search of an arrestee's personal belongings. But see *People* v. *Laiwa,* 34 Cal. 3d 711, 195 Cal. Rptr. 503, 669 P.2d 1278 (1983) (legitimate purposes of booking search do not justify premature on-site search); see also *Illinois* v. *Lafayette,* 462 U.S. 640, 643–47, 103 S. Ct. 2605, 77 L. Ed. 2d 65 (1983) (factors and governmental interests justifying search at police station are different from and broader than those justifying search immediately following arrest). See also *State* v. *Murphy,* 6 Conn. App. 394, 505 A.2d 1251 (1986).

cause and which cannot be justified by any of the rationales urged upon us by the state. Thus, the evidence which it yielded should have been suppressed with respect to the charge of possession of a controlled substance.

## III

The defendant's conviction on four counts of bribery was based on the following facts: At the site of the arrest, after the money and marihuana were discovered in the defendant's coat, the defendant suggested to police officers Peter Slocum and Gary Cooper that they "lose the pot and take the money." At the police station, the defendant was present while the money was being inventoried and counted. He repeated his suggestion to two other police officers. We conclude that, although the cash and marihuana unlawfully seized from the defendant should have been suppressed in the state's case-in-chief against the defendant on the charge of possession of a controlled substance, it was properly admitted against him on the bribery charges. This conclusion derives from our analysis of the purpose of the exclusionary rule and its proper limits.[7]

The purpose of the exclusionary rule is the deterrence of police misconduct and the removal of inducements to unreasonable invasions of privacy. *United States* v. *Leon*, 468 U.S. 897, 913-17, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). It is now clear that the exclusionary rule "operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.' " *United States* v. *Leon,* supra, 906, quoting *United States* v. *Calandra,*

---

[7] We note in this connection that the defendant makes no claim that the purpose or scope of the exclusionary rule is any broader under our state constitution than under the federal constitution. Thus, we see no need to undertake such a separate analysis. *State* v. *Apostle,* 8 Conn. App. 216, 219 n.2, 512 A.2d 947 (1986).

414 U.S. 338, 348, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974). The fourth amendment " 'has never been interpreted to proscribe the introduction of illegally seized evidence in all proceedings or against all persons.' " *United States* v. *Leon,* supra, quoting *Stone* v. *Powell,* 428 U.S. 465, 486, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976). Whether the rule is applied in a particular case "must be resolved by weighing the costs and benefits of preventing the use in the prosection's case-in-chief of inherently trustworthy tangible evidence"; *United States* v. *Leon,* supra, 907; obtained in a manner that does not comport with substantive fourth amendment standards. Id., 909. Thus, the United States Supreme Court has held that the costs of the exclusionary rule outweighs its benefits and that it does not apply in certain federal habeas corpus proceedings; *Stone* v. *Powell,* supra; in federal grand jury proceedings; *United States* v. *Calandra,* supra; and in federal civil proceedings. *United States* v. *Janis,* 428 U.S. 433, 96 S. Ct. 3021, 49 L. Ed. 2d 1046 (1976). The Court has also held that it does not apply to bar impeachment of a defendant's direct testimony; *United States* v. *Havens,* 446 U.S. 620, 100 S. Ct. 1912, 64 L. Ed. 2d 559 (1980); *Walder* v. *United States,* 347 U.S. 62, 74 S. Ct. 354, 98 L. Ed. 503 (1954); and that the limits imposed by its purpose underlie the cases permitting the introduction of illegally seized evidence against an unaggrieved codefendant, limiting the class of persons who can challenge a search, and permitting the introduction of tainted evidence which is nonetheless sufficiently attenuated from the initial illegality. See *United States* v. *Leon,* supra, 909–10, and cases cited therein. "[A]n assessment of the flagrancy of the police misconduct constitutes an important step in the calculus." Id., 911. *Leon* makes it clear that, in the light of the fundamental deterrent purpose of the exclusionary rule, if it is to be applied in order "to have any deterrent effect . . . it must

alter the behavior of individual law enforcement officers or the policies of their departments." Id., 918.

The application of these principles leads us to conclude firmly that the exclusionary rule should not be applied to bar the introduction into evidence of the cash and marihuana with respect to the charges of bribery in this case. Those items were themselves the very instruments of the crimes committed by the defendant. He sought to use the cash to persuade the policemen to "lose" the marihuana which he illegally possessed. The exclusionary rule does not go so far as to permit a defendant to use evidence which has been illegally seized from him as a means of committing further crimes with impunity. The deterrent purpose of the exclusionary rule in this case is adequately satisfied by suppression of the evidence as to the illegal possession charge. The cost of excluding this evidence with respect to the bribery charges far outweighs any incremental deterrent effect which would flow from its suppression. See *United States* v. *Turk*, 526 F.2d 654, 667 (5th Cir. 1976) (illegally seized evidence admissible in perjury trial of victim of search, when perjury occurred after search and with knowledge of victim that search had occurred).

Indeed, it is difficult for us to conceive that, under the circumstances of this case, application of the exclusionary rule would in any way alter the behavior of individual policemen or the policies of their department. We do not believe that any police officer, or his department, needs to be further deterred from performing an invalid warrantless search by the gross penalty of barring from evidence the fruits of that search, which were subsequently used to bribe the police officers involved in the search and in the inventory of its fruits. This is particularly true here, where the misconduct of the police, while falling short of minimum constitu-

tional standards of probable cause, was hardly flagrant. See *United States* v. *Leon,* supra.

There is error in part, the judgment is set aside only as to the second count, possession of a controlled substance, and the case is remanded for a new trial on that count. With respect to the other counts, there is no error.

In this opinion the other judges concurred.