## STATE OF CONNECTICUT *v.* CONFESSOR RODRIGUEZ
## (5199)

DUPONT, C. J., BORDEN and DALY, Js.

Argued March 4—decision released May 26, 1987

*Kimball Haines Hunt,* with whom, on the brief, was *William J. Wholean,* for the appellant (defendant).

*Patricia B. Perkins,* special assistant state's attorney, with whom, on the brief, was *John M. Bailey,* for the appellee (state).

BORDEN, J. The defendant appeals from the judgment of his conviction of the crime of possession of narcotics with intent to sell in violation of General Statutes § 21a-278 (b). The conviction followed his conditional plea of nolo contendere which was entered, pursuant to General Statutes § 54-94a,[1] after the trial court denied his motion to suppress. The defendant appeals claiming that the trial court erred in denying his motion to suppress. We find no error.

At the hearing on the defendant's motion to suppress, the trial court found the following relevant facts. Detective Robert L. Kanaitis of the Hartford police department received a tip from a known informant that on the next day, at about 7:30 p.m., the defendant would be arriving at 363 Capitol Avenue, in Hartford, from New York. He would be arriving in a yellow Chevrolet Monte Carlo and would be in possession of 600 silver heat sealed bags of heroin. Kanaitis testified that

---

[1] General Statutes § 54-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

In order for a defendant to preserve the right to appeal the court's decision, there must be some indication in the record that the plea of nolo contendere was conditional upon the right to appeal. *State* v. *Gilnite,* 202 Conn. 369, 376, 521 A.2d 547 (1987). The defendant's written plea of nolo contendere does not indicate that it was entered conditionally pursuant to General Statutes § 54-94a. Our review of the transcript of the plea proceedings, however, establishes that the plea was entered pursuant to General Statutes § 54-94a.

the informant was known to him and had provided reliable information in the past. Specifically, over the past two years, the informant had provided him with information on approximately fourteen occasions. The information had proved accurate on thirteen of the fourteen occasions, and on the fourteenth occasion was only inaccurate as to the amount of contraband. The information had led to arrests and convictions. Further, Kanaitis testified that the informant had known the defendant for one year and had been present when the defendant discussed his plans for transporting heroin from New York. Based on this tip, Kanaitis and Officer James Howard established a surveillance, the following day, in an unmarked camper parked in a lot adjacent to 363 Capitol Avenue. At about 7:15 p.m., the defendant was observed approaching the area in a vehicle with two other persons. This was not the vehicle described by the informant. Shortly thereafter, the defendant, two companions and the defendant's seven year old son were observed walking toward a green station wagon which was parked in a lot adjacent to 363 Capitol Avenue. Thereafter, Kanaitis and Howard emerged from the camper, announced that they were armed with a search warrant and ordered the three men to place their hands on top of the vehicle.[2]

At the time Kanaitis and Howard emerged from the camper, the defendant had been approaching the north side of the car while his two companions had been approaching the south side. As these two people placed their hands on the south side roof of the car, Howard observed a silver heat sealed bag fall to the ground between them. Howard stated "I got the dope." Thereafter, Kanaitis arrested the defendant and Howard arrested his companions. Kanaitis conducted a search

[2] While the officers were armed with a search warrant, the state chose not to rely on it at the suppression hearing. On the contrary, the state specifically proceeded on a theory of "a simple, on-site, probable cause arrest."

of the defendant which revealed nothing. Shortly there-after, Officer Lawrence B. Yohe, who had been called as back-up, searched the defendant prior to transporting him to the police station. This search yielded eighteen silver heat sealed plastic bags containing heroin in the right-front coin pocket of the defendant's jeans.

The defendant moved to suppress the evidence of the heroin claiming that the trial court erred in concluding (1) that Kanaitis had a reasonable and articulable suspicion to justify stopping the defendant in the first place under *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968),[3] and (2) that even if the stop was legal, the trial court nonetheless erred in holding that reasonable suspicion had ripened into probable cause to arrest the defendant based on subsequent events. Whether we find the initial stop or ensuing arrest illegal, the defendant claims that the contraband seized from him should be suppressed as a fruit of the original illegality. The state claims, on the other hand, that the initial investigative stop was permissible under *Terry* v. *Ohio,* supra, since it was based on reasonable and articulable suspicion, and that the suspicion escalated into probable cause to arrest the defendant when one of his companions dropped the silver bag which appeared to contain contraband.

---

[3] We note some confusion in the trial court memorandum with respect to the nature of this initial seizure. The court held that at the time the officers approached the defendant and his companions, they had probable cause to search the defendant. The court also stated that "[t]his initial detention was for investigatory purposes and did not constitute an actual arrest of the person of the defendant." The term "probable cause" whether in the context of an arrest or search, has a constant meaning. Therefore, the memorandum of decision could be read, despite the reference to an investigatory stop, to support a finding of probable cause to arrest. Since neither the defendant nor the state has characterized the initial seizure as an arrest, however, we will read the memorandum as the litigants do, namely, to uphold the initial seizure as an investigative stop.

I

"It is well established that police may momentarily detain an individual for investigative purposes if the police have 'a "reasonable and articulable" suspicion that [he has] engaged in criminal activity. *Reid* v. *Georgia,* 448 U.S. 438, 440, 100 S. Ct. 2752, 65 L. Ed. 2d 890 (1980); *Terry* v. *Ohio,* [supra].' *State* v. *Carter,* 189 Conn. 611, 617, 458 A.2d 369 (1983). What constitutes a reasonable and articulable suspicion depends on the 'totality of the circumstances.' *United States* v. *Cortez,* 449 U.S. 411, 417, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981). 'The test to be applied, however, is an objective one: "would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Terry* v. *Ohio,* supra, 22. In justifying the particular intrusion "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry* v. *Ohio,* supra, 21 . . . . ' " (Citations omitted.) *State* v. *Aversa,* 197 Conn. 685, 690–91, 501 A.2d 370 (1985).

Under the circumstances of this case, the trial court did not err in determining that the officers had reasonable and articulable suspicion to believe that the defendant was engaged in criminal activity. Kanaitis had received a tip that the defendant would be arriving at 363 Capitol Avenue at about 7:30 p.m. from New York in a yellow Chevrolet Monte Carlo and would have 600 silver heat sealed bags of heroin in his possession. At the hearing, Kanaitis testified that he received this tip from a reliable informant whose information had led to arrests and convictions in the past. Further, Kanaitis testified that the informant's tip was based on personal knowledge since he had been present when the defendant discussed his impending plans. Based on

Kanaitis' testimony, it is arguable that both the credibility and basis of knowledge prongs of the test for assessing informer information were met. *State* v. *Kimbro,* 197 Conn. 219, 236–37, 496 A.2d 498 (1985).

The defendant argues, however, that because the police officers were unable to corroborate any aspects of the informant's tip, its reliability was undermined and therefore it could not justify stopping the defendant. The trial court found that the only corroboration of the tip was that the defendant arrived at the approximate time and place indicated by the informant. The court specifically gave very little weight to these corroborating facts because the place of arrival also happened to be the the defendant's home. We are not convinced that such corroboration is necessary to justify a *Terry* stop. The defendant has not claimed that this seizure was an arrest, and therefore we need not decide whether corroboration of non-innocent aspects of the informant's tip would have been required to establish probable cause to arrest. An informant's unverified tip may not be sufficient for a narcotics arrest or search warrant, but may nonetheless carry enough indicia of reliability to justify an officers' forcible stop of a suspect. *Adams* v. *Williams,* 407 U.S. 143, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972); see also *State* v. *Love,* 169 Conn. 596, 363 A.2d 1035 (1975). "Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized. But in some situations—for example, . . . when a credible informant warns of a specific impending crime—the subtleties of the hearsay rule should not thwart an appropriate police response." *Adams* v. *Williams,* supra, 147.

In this case, it was established that the informant was credible and had personal knowledge of the information he conveyed. Additionally, the trial court specifi-

cally found that Kanaitis knew the defendant was involved in the drug trade from prior experiences with him. In assessing the reliability of information provided by an informant, "we have relied upon the reputation of past criminal behavior of the suspect as a practical consideration. *State* v. *Ferguson,* 185 Conn. 104, 115, 440 A.2d 841 (1981)." *State* v. *Kimbro,* supra, 232. Under the facts of this case, the uncorroborated tip of the known informant established reasonable and articulable suspicion to believe the defendant was engaged in criminal activity, thereby justifying an investigative stop of the defendant.

## II

Immediately following an investigative stop, events or circumstances may arouse further suspicion in an officer's mind or dispel questions that arose. If suspicion is dispelled, the stop may go no further and the detained individual must be free to go. If, on the contrary, the officer's suspicions are confirmed or are further aroused, the stop may be prolonged and the scope enlarged as required by the circumstances. *State* v. *Acklin,* 171 Conn. 105, 111, 368 A.2d 212 (1976). The defendant claims that the events that occurred after the stop did not raise the level of suspicion to the level of probable cause. The trial court found that the sole event to have occurred after the initial stop was that one of the defendant's two companions dropped a silver heat sealed bag containing suspected contraband. We must determine whether this single event was sufficient to establish probable cause to arrest the defendant.

" ' "Probable cause means more than mere suspicion. There must be facts and circumstances within the officer's knowledge, and of which he has trustworthy information, sufficient to justify the belief of a reasonable person that an offense has been or is being com-

mitted. . . . There is often a fine line between mere suspicion and probable cause, and '[t]hat line necessarily must be drawn by an act of judgment formed in the light of the particular situation and with account taken of all the circumstances.' " ' *State* v. *Martin,* 2 Conn. App. 605, 612B–13, 482 A.2d 70 (1984), cert. denied, 472 U.S. 1009, 105 S. Ct. 2706, 86 L. Ed. 2d 721 (1985). 'Moreover, the probable-cause determination must be based on objective facts that could justify the issuance of a warrant by a magistrate and not merely on the subjective good faith of the police officers. . . . "[G]ood faith is not enough to constitute probable cause. That faith must be grounded on facts within the knowledge of the [officer], which in the judgment of the court would make his faith reasonable." ' *United States* v. *Ross,* [456 U.S. 798, 808, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982)]." *State* v. *Cooper,* 9 Conn. App. 15, 23, 514 A.2d 758 (1986).

The defendant claims that his mere proximity to others suspected of criminal activity, without more, does not constitute facts within the officer's knowledge sufficient to give rise to probable cause to arrest and search him. He relies on *Ybarra* v. *Illinois,* 444 U.S. 85, 100 S. Ct. 338, 62 L. Ed. 2d 238 (1979), reh. denied, 444 U.S. 1049, 100 S. Ct. 741, 62 L. Ed. 2d 737 (1980), and other cases, only one of which, *United States* v. *Sporleder,* 635 F.2d 809 (10th Cir. 1980), bears on his claim. These cases, however, are not on point. They involve warrantless searches of persons on the basis of their *presence* during the execution of a valid search warrant for a specific place. It is in this context that mere presence, without more, is insufficient to justify a warrantless search. The issue before this court is different, namely, whether there was probable cause to arrest the defendant, after a valid *Terry* stop, once Howard discovered that one of the defendant's two companions had dropped the silver bag of heroin. In

this context, we must decide whether the defendant's mere presence is sufficient to ripen reasonable suspicion into probable cause to arrest, and subsequently, to search the defendant incident to that arrest.

A review of Connecticut law has revealed only one case that incidentally bears on this issue. In *State* v. *Acklin,* supra, police officers stopped a vehicle driven by Acklin on the suspicion that he and the two occupants, one of whom along with Acklin was a defendant in one of the cases on appeal, had been involved in an earlier robbery. During a patdown, an officer discovered a handgun on Acklin. After concluding that the frisk was justified, the court stated: "[a]fter the 'frisk' had revealed a handgun [on Acklin], the officers had probable cause to arrest the *defendants* and to search their persons and their automobile contemporaneously with their arrest." (Emphasis added.) Id., 113. While this case provides some guidance, we note that the specific issue of whether the discovery of a handgun on Acklin created probable cause to arrest and search the other occupants of the automobile was not raised. In the present case, unlike in *State* v. *Acklin,* supra, the defendant and his companions were in a public place and *not* together in a car. In *State* v. *Acklin,* supra, the police officers might more readily have inferred joint activity with respect to the possession of the gun. This inference is more difficult to draw in this case, especially in light of the absence of testimony by either Kanaitis or Howard that the people who were in the car with the defendant when he first approached the area were the same people who were walking with him toward the station wagon.

Our research has revealed some cases in other jurisdictions involving the issue of "mere presence" in public places. In *Nast* v. *State,* 333 So. 2d 103 (Fla. 1976), the court held that a police officer lacked probable cause to arrest the defendant for possession of contraband

where the officer observed the defendant in a public place in the middle of the afternoon, apparently conversing with an acquaintance who was caught, upon approach of the police officers, disposing of contraband over a seawall. In *Jones* v. *State,* 493 S.W.2d 933 (Tex. Crim. App. 1973), however, the court came to a different conclusion. In that case, officers approached a group of five men in an alley, including the defendant. Two of the men threw down objects found to contain marijuana. The court held there was probable cause to arrest the defendant as well as the other men and to conduct a search incident to the arrest. The court stated:"No doubt can be entertained that the officers had probable cause to arrest and search the two individuals that threw down the contaband as the officers, at this point, had witnessed a crime being committed in their presence. . . . Although the search of the appellant presents a slightly different question, we conclude that the facts and circumstances within the knowledge of the officers at that moment were sufficient to lead a man of reasonable caution and prudence to believe that appellant too was committing a crime and that a search of appellant would produce the instrumentality of a crime or evidence pertaining to a crime." Id., 935–36.

We accept the proposition that the mere fact, without more, that a person is associating with or in the presence of others who are suspected of criminal activity, does not by itself establish probable cause to arrest or search that person. *Sibron* v. *New York,* 392 U.S. 40, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968); *United States* v. *Di Re,* 332 U.S. 581, 68 S. Ct. 222, 92 L. Ed. 210 (1948). When there is "more," however, probable cause may exist. In this case, the raison d'etre for the initial stop was a tip that *the defendant* would be bringing silver heat sealed bags of heroin from New York to Hartford. The focus of attention was on the defend-

ant, *not* his two companions. When the officers approached the group and one of the companions dropped a silver heat sealed bag, the suspicion that the defendant was participating in a crime involving the transportation of such bags heightened into probable cause. This fact was sufficient to lead the officers to conclude that not only was there criminal activity afoot, but that the defendant was involved in it. On the basis of the facts and circumstances within the officers' knowledge, they were justified in concluding there was probable cause to arrest the defendant. *State* v. *Cooper,* supra. Consequently, the searches conducted subsequent to the arrest were proper as incident to it.

There is no error.

In this opinion the other judges concurred.