STATE OF CONNECTICUT *v.* GEORGE VELEZ
(7224)

DALY, NORCOTT and FOTI, Js.

Argued September 19—decision released October 24, 1989

*Brian J. Kornbrath,* with whom, on the brief, was *Jon L. Schoenhorn,* for the appellant (defendant).

*Timothy Sugrue,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Paul Murray,* assistant state's attorney, for the appellee (state).

NORCOTT, J. The defendant appeals from the judgment convicting him of possession of narcotics with intent to sell in violation of General Statutes § 21a-278 (b).[1] After the trial court denied his motion to suppress all evidence seized during a search of his person incident to his arrest, the defendant entered a conditional plea of nolo contendere pursuant to General Statutes § 54-94a.[2] On appeal, the defendant claims that the trial court erred in denying his motion to suppress because the arresting officers did not have probable cause to effect a warrantless arrest and subsequent search, and thereby violated his rights under both the United States and Connecticut constitutions.[3]

At the suppression hearing, the trial court made the following findings of fact. On October 28, 1987, at approximately 8 p.m., the Tri-Town Task Force[4] executed a search warrant at the condominium of Lydia Cameron and Brian Cowell in South Windsor. After the couple had received their *Miranda* warnings,[5] and in the course of the search and interrogation, Cameron

---

[1] General Statutes § 21a-278 (b) provides in pertinent part: "Any person who . . . possesses with the intent to sell or dispense . . . any narcotic substance . . . and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years."

[2] General Statutes § 54-94a provides in pertinent part: "When a defendant . . . enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure . . . the defendant after the imposition of sentence may file an appeal within the time prescribed by law."

[3] The fourth amendment to the United States constitution and article first, § 7, of the Connecticut constitution protect the right of the people to be free from unreasonable searches and seizures.

[4] The Tri-Town Task Force consists of the Manchester, Vernon and South Windsor police departments specializing in narcotics and other drug related activities.

[5] *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

told the police that Cowell had been dealing drugs for about a year and that the defendant, George Velez, was his supplier. After being taken into custody and taken to the police station, Cowell gave information over the telephone or radio to the police still in his condominium as to where they could find his "stash" of two ounces of cocaine that he claimed to have purchased earlier that day from the defendant. The stash was located in a locked tool box hidden in a closet behind a wall. The entire wall was constructed to slide up and down. Cowell gave the police the combination to the box, and they opened it and found the cocaine.

The police then asked Cowell to call his supplier, who Cowell claimed was the defendant. At their request, Cowell made the phone call to the defendant's home from a "clear line" at the police department.[6] Cowell told the police that the person who answered the telephone said that the defendant was not at home. Cowell then called DePortivo's, a social club in Hartford which the defendant was said to frequent. Cowell asked for the defendant and set up a meeting with the person with whom he spoke, claiming he was the defendant. The police heard only Cowell's side of the telephone conversation; they neither recorded nor listened to the conversation from another extension. While Cowell was at the police department, the police at his condominium verified the phone numbers that Cowell had dialed as those of the defendant and DePortivo's respectively, having found the same numbers in Cowell's apartment.

Cowell finalized the meeting and told the police that the meeting with the defendant would take place at 11:30 p.m. at the 7-Eleven in South Windsor. Cowell said that the defendant was having mechanical prob-

---

[6] A clear line is a telephone line that has a phone number different from the general police department phone number and is answered with a simple "Hello."

lems with his car and that he might arrive in another person's car. Cowell also gave a general description of the defendant to the police. The trial court found that probable cause to arrest attached at that point.

The police set up surveillance at the 7-Eleven store in unmarked police cars. Cowell remained in one of the unmarked cars. Around 11:30 p.m., a blue Camaro pulled into the 7-Eleven parking lot, and the passenger, a man whom Cowell tentatively identified as the defendant, exited the car and entered the store. One officer entered the store to determine whether that man fit the general description that Cowell had provided. Satisfied that the man in the store did fit that description, the officer returned to his surveillance point, called in a request for the registration of the car, and found that it was registered to one "Felix Velez."

The defendant reentered the car after purchasing some food items and began to exit the parking lot. At that point, the unmarked police car blocked the defendant's car, and the officers arrested the defendant and subsequently searched him. Their search yielded two packets of cocaine, one containing twenty-nine grams and the other containing two or three grams. The trial court found that the arrest had occurred at the point when the police blocked the car, and that probable cause to arrest was further substantiated by the defendant's arrival.[7]

The defendant argues that the information provided by the informant failed to meet the requisite two-pronged test first enunciated in *Aguilar* v. *Texas,* 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964), and *Spinelli* v. *United States,* 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969), and adopted by this state in

[7] Both sides agree that, at the moment the police blocked the defendant's car, took his keys and prevented his departure, the defendant was under arrest.

*State* v. *Kimbro,* 197 Conn. 219, 221, 496 A.2d 498 (1985), and that the police failed to corroborate the information sufficiently to raise their suspicions to the level of probable cause to arrest. He contends that both his state and federal constitutional rights were violated. Since a challenge to the sufficiency of probable cause under our state constitution is governed by this stricter *Aguilar-Spinelli* test as opposed to the federal constitutional test articulated in *Illinois* v. *Gates,* 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527, reh. denied, 463 U.S. 1237, 104 S. Ct. 33, 77 L. Ed. 2d 1453 (1983), we consider the defendant's claim only under our state's more protective constitutional standard. *State* v. *Banta,* 15 Conn. App. 161, 175 n.5, 544 A.2d 1226, cert. denied, 209 Conn. 815, 550 A. 2d 1086 (1988).

Although the two-pronged *Aguilar-Spinelli* test was first applied in a case involving a warrant, the same standards for probable cause apply to warrantless situations as well. *State* v. *Martin,* 2 Conn. App. 605, 612B, 482 A.2d 70 (1984), cert. denied, 195 Conn. 802, 488 A.2d 457, cert. denied, 472 U.S. 1009, 105 S. Ct. 2706, 86 L. Ed. 2d 721 (1985). Under this test, the sufficiency of the information in an affidavit that relies on an informant depends upon the existence of (1) the informant's basis of knowledge about the information provided, and (2) the underlying facts establishing his credibility or reliability. *State* v. *Kimbro,* supra, 224–25. This test focuses on three types of informant tips: (1) those from an informant known for the reliability of his predictions of certain types of criminal activities in a particular area; (2) those from an honest citizen who voluntarily reports criminal activity; and (3) "those from an informant who, although his motives may be open to question, supplies an explicit and detailed description of alleged wrongdoing, along with an indication that the event was observed firsthand, thus entitling the tip to greater weight than might other-

wise be the case." *State* v. *Martin,* supra, 615 (refer-
ring to situations where *Gates,* the federal standard par-
allel to Connecticut's *Kimbro* test, applies). In our case,
the type of information with which we are dealing most
closely proximates the third type under *Martin.*

The defendant was subjected to a warrantless arrest
and search incident thereto. " 'There is no more basic
constitutional rule in the Fourth Amendment area than
that which makes a warrantless search unreasonable
except in a few "jealously and carefully drawn" excep-
tional circumstances.' *United States* v. *Watson,* [423
U.S. 411, 427, 96 S. Ct. 820, 46 L. Ed. 2d 598 (1976)]
(Powell, J., concurring)." *State* v. *Kimbro,* supra, 238.
It is axiomatic that the constitutional validity of the
search is dependent upon the constitutional validity of
the arrest, which can be valid only if the police pos-
sessed probable cause at the time of that arrest. Id.,
223. An officer is authorized to arrest any person who
he has "reasonable grounds to believe has committed
or is committing a felony." General Statutes § 54-1f (b);
*State* v. *Penland,* 174 Conn. 153, 155, 384 A.2d 356,
cert. denied, 436 U.S. 906, 98 S. Ct. 2237, 56 L. Ed.
2d 404 (1978). Reasonable grounds has been interpreted
to mean probable cause. Id. "Although the precise
determinations differ when probable cause to *search
and seize* is at issue as opposed to probable cause to
*arrest,* ' "it is generally assumed by the Supreme Court
and the lower courts that the same quantum of evidence
is required [for either]." ' " *State* v. *DeChamplain,* 179
Conn. 522, 529 n.7, 427 A.2d 1338 (1980). Probable
cause for a warrantless arrest exists only when "[t]here
must be facts and circumstances within the officer's
knowledge, and of which he has trustworthy informa-
tion, sufficient to justify the belief of a reasonable per-
son that an offense has been or is being committed";
*State* v. *Penland,* supra, 155; and that the person
arrested committed the felony. *State* v. *DeChamplain,*
supra, 529.

In a warrantless arrest or search, as well as one made pursuant to a warrant, the reviewing court must pay great deference to the magistrate's determination of probable cause. *State* v. *Kimbro,* supra, 222. This court must not attempt a de novo review where there has already been a determination at a suppression hearing that probable cause exists. Id. When a trial court rules on a motion to suppress without making detailed findings of fact to support its ruling, "an appellate court may look to the evidence produced in support of the ruling." *State* v. *Martin,* supra, 614. Where, as in this case, however, "the trial court performs its judicial function conscientiously by detailing the facts which the state has established, we are not free to add facts which are not found and which are not undisputed. See *State* v. *Perez,* 181 Conn. 299, 302–303, 435 A.2d 334 (1980)." Id.

In this case, the informant, Cowell, who was already in police custody and whose condominium was being searched, told the police where they could find his cocaine. He then claimed that his supplier was Velez and that he had purchased his cocaine from Velez. The state asserts that this statement satisfies both prongs of the *Aguilar-Spinelli* test, arguing that the informant's basis of knowledge is his own participation in the crime with the defendant, and that the statement given was against the informant's penal interests, hence rendering it reliable. The state argues further that this original statement was a valid basis upon which to credit the informant's subsequent information that he made his phone call to DePortivo's social club, spoke to the defendant, and set up a deal with him. We disagree.

While the previous reliability of an informant can be a basis for crediting his information; *State* v. *Ferguson,* 185 Conn. 104, 116, 440 A.2d 841 (1981); this informant had never provided information to the police

before, and, hence, they did not know whether he was a reliable source of information. When presented with information provided by an untested informant, our Supreme Court has considered several factors to judge that informant's credibility. "Three of the most common factors used to evaluate the reliability of an informant's tip are (1) corroboration of the information by police, (2) declarations against penal interest by the informant-declarant, and (3) the reputation and past criminal behavior of the suspect." Id., 113. These factors are relevant in determining whether the tip of an informant can serve as the basis for establishing probable cause. The mere existence of one or more of these factors, however, may still be insufficient to rise to the level of probable cause. Id., 115. "[W]here the tip involves a prediction of future activity, it is not necessary that the tipster himself indicate a basis of firsthand knowledge, *as long as the detail of the tip indicates a 'fair probability' that the information came from the target* of the tip or from someone whom the target trusted, *and as long as that probability was provided by corroboration of the 'major portions'* of the tipster's predictions. [*Illinois* v. *Gates,* supra, 246]." (Emphasis added.) *State* v. *Martin,* supra, 615.

After confirming the location of the cocaine, the police requested that the informant call the defendant to set up a cocaine sale. The informant first called the defendant's home. The police confirmed only that he dialed the defendant's phone number. They did nothing to attempt to hear any more than the informant's side of the conversation. The informant next called DePortivo's social club at about 10 p.m. and asked for the defendant; he then told the police that the defendant was supposed to return his call at 10:30 p.m. At about 11 p.m., since the defendant had failed to return the call, the police asked the informant to try again. The informant called DePortivo's and spoke with some-

one who he claimed was the defendant and ultimately arranged a meeting to take place at 11:30 p.m. Once again, the police made no attempt to hear anything other than the informant's side of the conversation, and could only assume that the informant was being truthful.

The informant told the police only that he was to meet the defendant at the 7-Eleven store at approximately 11:30 p.m., and that the defendant might arrive in someone else's car. The informant neither described the car nor gave any details as to what the defendant would do upon arrival. When the defendant did arrive at the 7-Eleven at about 11:30 p.m., as a passenger in another vehicle, the informant could not make a positive identification. As he saw the defendant exit the car and enter the store, he was able to say only that this man might be the defendant. One police officer followed him into the store, verified only that he fit the general description given by the informant, called in the car registration, and discovered it was registered to one Felix Velez. The officers watched as the defendant bought some food items, got back in the car and began to exit the lot. At this point, the police blocked the defendant's car with their own and arrested the defendant, removing him from the car.

The trial court held and the state concedes that the arrest occurred at the point at which the police surrounded the defendant's car. Probable cause had to exist at that point in order for this arrest to be constitutionally valid. Although the court found that probable cause did exist at 11 p.m., probable cause did not exist before the defendant's arrival at the 7-Eleven, and, therefore, the events that took place at the store must be considered.

In a litany of leading Connecticut cases our appellate courts have analyzed the question of probable cause

to arrest when presented with information provided by an informant. After carefully reviewing the record, our analysis has led us to conclude that the police did not have sufficient information to constitute probable cause. The fact that the defendant actually arrived at the 7-Eleven at the time predicted was not enough to elevate the police officers' information to the level of probable cause.[8] See *State* v. *Love,* 169 Conn. 596, 601–602, 363 A.2d 1035 (1975); cf. *United States* v. *Yanes,* 671 F. Sup. 927 (D. Conn. 1987); *State* v. *Rodriguez,* 11 Conn. App. 140, 525 A.2d 1384 (1987); *State* v. *Martin,* supra.

In *State* v. *Martin,* supra, the court was presented with much more information than the officers had in this case. In *Martin,* the police not only verified the informant's information about the color and make of the defendant's car, the out-of-state license plates, the estimated time and place of arrival at a location known for its drug activity, and the defendant's general description, but they also witnessed furtive activity by the defendant. "What followed the defendant's arrival at the cafe at the generally predicted time and in a vehicle which fit the general description given in the tip was that the defendant left the vehicle with one person, returned with another who had an eight year old drug conviction, and *moved the vehicle from an illuminated area to an unilluminated area.*" (Emphasis added.) Id., 615–16.

In that case, this court held that the amount of detail of the tip and the police officer's corroboration were

---

[8] Although it may have been sufficient to create a reasonable suspicion justifying a *Terry* stop, the state did not attempt to justify the warrantless seizure on the basis that it was an investigatory stop to be measured by reasonable and articulable suspicion, nor was their conduct supportive of such an assertion. Upon blocking the defendant's car, they removed him from it and searched him. Cf. *State* v. *Martin,* 2 Conn. App. 605, 612–612A, 482 A.2d 70 (1984).

"moderate, to say the most." Id., 614. Even in apply-ing the more liberal federal *Gates* standard, the court held that "[w]hile this activity may well have given . . . reasonable and articulable suspicion that the predicted drug sale was taking place, and while this is a close case, we cannot say that the amount of the detail originally supplied was enough, and that it was sufficiently corroborated by further detail" to support probable cause. Id., 616.[9]

In *State* v. *Love,* supra, our Supreme Court held that when the officers detained the cab in which the defend-ant was a passenger they had a reasonable and articul-able suspicion justifying only a *Terry* stop. In *Love,* a known and reliable informant said that the defendant would arrive by train in Bridgeport from New York with narcotics, and he might be with a female. The offi-cer knew the defendant from prior narcotics investi-gations, he saw the defendant come from under the railroad tunnel in Bridgeport with a female at the gen-erally predicted time, and he saw the two get into a cab. *State* v. *Love,* supra, 598. The officer approached the car for investigatory purposes and observed the defendant pass a bag to the female, who in turn, threw it out of the cab. It was not until the officer saw the defendant furtively pass the bag to the female, and the female discard it, that there was probable cause to arrest. Id., 589–99.

This court held in *State* v. *Rodriguez,* supra, that where the informant had given a detailed tip, the detail of which was corroborated, the stop of the defendant was justifiable only as an investigatory *Terry* stop because the police had only a "reasonable and articul-

[9] The court in *State* v. *Martin,* 2 Conn. App. 605, 482 A.2d 70 (1984), addresses a federal constitutional claim, and therefore proceeds under the federal standard of *Illinois* v. *Gates,* 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). This case is still relevant because if the case fails under the federal standard it must necessarily fail under our stricter *Kimbro* stan-dard. *State* v. *Kimbro,* 197 Conn. 219, 496 A.2d 498 (1985).

able suspicion." Id., 144. The informant in *Rodriguez* had provided reliable information on fourteen occasions with only one inconsequential inaccuracy as to the amount of contraband. The police officer received a detailed tip from this informant that "on the next day, at about 7:30 p.m., the defendant would be arriving at 363 Capitol Avenue in Hartford, from New York . . . in a yellow Chevrolet Monte Carlo and would be in possession of 600 silver heat sealed bags of heroin." Id., 141. The officer corroborated the information when he observed the defendant approach the predicted area and walk toward a green station wagon with two companions and his seven year old son.

The officers then approached the defendant to conduct a *Terry* stop but did not attempt to apprehend the defendant. Upon approaching the group, the officer saw one of its members drop a silver heat sealed bag that he knew to be the type used to carry drugs. It was not until the officers saw someone in the group drop one of the silver heat sealed bags that reasonable suspicion heightened into probable cause. Id., 142–43.

Finally, in *United States* v. *Yanes,* supra, the Connecticut District Court held that FBI agents did not have probable cause to arrest the defendant until the defendant actually performed acts consistent with the anticipated drug deal. In *Yanes,* an FBI informant provided information that the codefendant, Gorski, was interested in selling cocaine. The informant predicted that Gorski would come to Connecticut on April 16, 1987, to discuss drug transactions. An FBI agent arranged for the person who was to meet Gorski to wear a transmitter and for FBI agents to monitor the meeting. The agents heard Gorski discuss a proposed drug deal in detail. They heard that the defendant Yanes was to be the source of the drugs that Gorski was to pick up and deliver to a buyer in Connecticut. Id., 929. Gorski was familiar with selling large quanti-

ties of cocaine, and he would arrange the purchase from Yanes and the delivery from the carrier in Florida to a buyer in Connecticut. The conversations also suggested that Gorski had been involved in prior drug deals. Id.

The prospective buyer spoke with Gorski and Yanes to confirm the sale. On April 26, he arranged to consummate the sale the following day between 5 and 6 p.m. with a courier whom he described and who was to arrive by bus. The agents observed Gorski meet a man who fit the description of the courier at the terminal, take a black travel bag from him and walk with him to meet the prospective buyer at his car. At that point, the agents surrounded the group and arrested the defendants. Id.

In applying federal law, the court held that even though the proposed drug deal was detailed and the police monitored the conversations, "the plan was only a plan and this information alone would not have provided probable cause for the arrests, seizure and search." Id. The court further held that probable cause existed because "the agents' information was closely corroborated by Gorski's conduct on April 27, 1987. *Specifically* . . . *Gorski met Cabrera,* a man who fit Gorski's prior description of his drug courier; Cabrera carried a bag and Gorski brought Cabrera with the bag to meet the prospective purchaser . . . ." (Emphasis added.) Id., 929–30. The court stated explicitly that because the conduct of the parties *"corroborated the transaction* . . . *[a]t that point* [when all the parties met], there was a reasonable basis to believe that Gorski was about to deliver a kilogram of cocaine to consummate the previously arranged sale." (Emphasis added; citations omitted.) Id., 930.

Our courts have repeatedly held that " '[p]robable cause means more than mere suspicion. . . .' " *State* v.

*Martin,* supra, 612B, quoting *State* v. *Penland,* supra, 155. In this case, while the police may have had a legitimate suspicion that the defendant had cocaine with him when he arrived at the 7-Eleven, such conjecture does not rise to the level of probable cause to believe that cocaine, in fact, was there. *State* v. *DeChamplain,* supra, 533.

Here, the police had only a tip given by an untested informant acting upon the request of police officers while in their custody and providing only general information about an alleged drug deal that the police never actually heard was supposed to occur. There was insufficient information available to the police from which they could determine that this informant or his information was reliable.[10] The fact that the police verified that the informant dialed the defendant's telephone number has little significance because the police did not know to whom, if anyone, the informant spoke. "In and of itself the listing of a telephone number to this individual suggests no criminal activity." *State* v. *DeChamplain,* supra. The informant allegedly reached the defendant at DePortivo's, not at his home. Further, that the police verified that the informant dialed the telephone number for DePortivo's is of little significance because the police heard only the informant's side of the conversation. Having made no attempts to verify that the informant was speaking to the defendant, the police had no way of knowing that he actually was; he could have been speaking to anyone at the social club.[11]

---

[10] The informant's first statement concerning the location of his cocaine was a statement against penal interest. That, however, is an insufficient basis upon which to credit the subsequent information that the informant relayed concerning his telephone conversation with someone he alleged to be the defendant.

[11] The trial court determined that at this point the police had probable cause to arrest the defendant. This ruling was erroneous. In *State* v. *DeChamplain,* 179 Conn. 522, 532, 427 A.2d 1338 (1980), our Supreme Court

The police went only so far as to verify that the defendant arrived at the store. Nothing beyond innocent aspects of the defendant's behavior was verified. The police did not attempt to conduct a controlled buy or place the informant in a place where they might witness some other suspicious behavior of the defendant.

We are presented with nothing analogous to the silver heat sealed bag as in *Rodriguez* or the furtive bag dropping as in *Love*. Had the police officers merely stopped the defendant for investigative purposes as in *Rodriguez* and *Love,* rather than arresting him, such an act may have been justified. As a result of a stop, "events or circumstances may arouse further suspicion in an officer's mind [leading to probable cause] or dispel questions that arose." *State* v. *Rodriguez,* supra, 146; *State* v. *Love,* supra, 601. Here, however, there are few circumstances corroborating the informant's information, except the fact that the defendant arrived at this particular place when the police were there. *State* v. *Kimbro,* supra, 228. By placing the defendant under arrest, the police officers acted prematurely, arresting him before their suspicions developed into probable cause.

There is error, the trial court's denial of the motion to suppress is reversed and the case is remanded with direction to grant that motion.

In this opinion the other judges concurred.

---

held that "[t]elephone calls by an informant to a particular number to 'order' illicit drugs do not per se establish probable cause to believe that the drugs themselves are located in the same premises as the telephone at which the 'order' is received." This rationale applies to the present case as well. The fact that the defendant ordered the drugs does not mean that the deal will actually occur.